IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES MAHONEY and<br>TINA MAHONEY, h/w<br><br>       Plaintiffs<br><br>v.<br><br>BENJAMIN BANNEKER ELEMENTARY<br>SCHOOL and MILFORD SCHOOL DISTRICT<br><br>       Defendants, Third-Party<br>       Plaintiffs<br><br>v.<br><br>PLYMOUTH ENVIRONMENTAL CO., INC.<br><br>       Third-Party Defendants | CIVIL ACTION NO. 05-163 GMS<br><br><br><br>TRIAL JURY OF TWELVE<br>DEMANDED<br><br>**E-FILE** |

### DEFENDANT, THIRD PARTY PLAINTIFF MILFORD SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT

1.  Plaintiff claims that she was injured on July 15, 2003 when she slipped on exterior stairs at the Benjamin Banneker Elementary School. Plaintiff claims that she fell because the condition of the stairs created an unreasonably dangerous condition. Plaintiff further claims that Defendant, Third-Party Plaintiff (Defendant) had a ministerial duty to maintain, clean, repair and inspect the stairs to provide a safe and hazard free area for her use. Cmplt. ¶ 23.

2.  When Plaintiff fell, she was working at the school as an employee of Plymouth Environmental, a company retained by Defendant to abate asbestos in the school prior to the school's demolition. The school year finished in the early part of June of 2003, Exh. 1 (J.M. Tr. at 44), and the asbestos abatement program started shortly thereafter. Exh. 1 (J.M. Tr. at 9-12). Plymouth first arrived on the site on or about June 30, 2003. Exh. 1 (J.M. Tr. at 13-14). Neither Mr. Marinucci, Defendant's Director of Operations for Defendant at the time, nor Mr. Mahoney,

one of the plaintiffs and Plymouth's on-site supervisor, expected the stairs at issue to be used during the asbestos abatement project. Exh. 1 (J.M. Tr. at 48); Exh. 2 (J.G.M. Tr. at 44-45). Although Mr. Marinucci was aware that the stairs had some spalling[1] on them as of the last day of school, Exh. 1 (J.M. Tr. at 44-45), he did not have the stairs repaired because the school was scheduled to be torn down after the asbestos was abated. Exh. 1 (J.M. Tr. at 48).

3.   The condition of the steps on the date of the accident was documented by Mr. Mahoney, who took photographs of the steps. Exh. 3 (photographs); Exh. 4 (Pl. Resp. to Interrog. #5). The photographs establish that the condition of the steps at the time of the fall was obvious[2] to anyone watching where they were going. Mrs. Mahoney, however, was not watching where she was going because she could not really see the stairs because her view was blocked by a box she was carrying. Exh. 5 (T.M. Tr. at 11-13).

I.   **SUMMARY JUDGMENT STANDARD**

4.   The Court should grant a motion for summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Varrallo v. Hammond, Inc.*, 94 F.3d 842, 843 (3d Cir. 1996) (citing Fed.R.Civ.P. 56(c)). The moving party has the initial burden of establishing that no genuine issue of material fact exists. *Pastore v. Bell Tele. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994). Once the moving party has carried its burden, "the non-moving party cannot rely on conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Id*. To defeat a motion for summary judgment, the nonmoving party must make a sufficient showing,

---

[1] Although Mr. Marinucci stated that he was aware that there was some broken up concrete on the steps on the last day of school, he testified that the area was not as large as it was on the date of the accident. Exh. 1 (J.M. Tr. at 44-46, including Marinnuci Exh. 8).

[2] After viewing the photographs taken by her husband on the date of the accident, Mrs. Mahoney characterized the damage that she saw in the photographs as "a whole lot of damage." Exh. 5 (T.M. Tr. at 13).

based upon affidavits or by the use of depositions and admissions on file, to establish the existence of every element essential to his case. *Id.* Unsupported, conclusory assertions of fact, cannot defeat a properly supported motion for summary judgment. *See Kappes v. E.I. DuPont De Nemours & Co., Inc.*, 1999 WL 166968 at *6, (D. Del.) (Exh. 6) (holding that plaintiff's unsupported assertion that he was "clearly qualified" was insufficient to defeat a motion for summary judgment).

## II. DEFENDANT DID NOT HAVE A DUTY TO PROTECT PLAINTIFF, AN EMPLOYEE OF AN INDEPENDENT CONTRACTOR, FROM OBVIOUS HAZARDS ON THE WORK SITE

5.   In Delaware, a landowner's duty to the employees of an independent contractor working on the landowner's premises is set forth in Restatement (Second) Torts, § 343. Pursuant to § 343, injured employees must show that:

> 1) the landowner knew, or reasonably should have known, of a concealed, previously existing hazardous condition on its premises;
>
> 2) the landowner knew, or reasonably should have known, that the contractor and its employees did not know, and could not reasonably have been expected to know, of the hazardous condition; and
>
> 3) the landowner nonetheless failed to warn the contractor or take other appropriate action to prevent the injury.[3]

In order to establish liability, Plaintiff must establish all three elements.[4]

6.   Under this standard, Defendant is not liable to Plaintiff because the condition on the stairs was an obvious condition, not a concealed condition. In addition, there is no evidence from which a trier of fact can reasonably conclude that Defendant knew or should have known that Mrs. Mahoney did not know, and could not reasonably expected to know, the dangers of

---

[3] *In re Asbestos Litigation*, 2006 WL 1214980 at *1 (Del.) (en banc) (slip op.) (Exh. 7)
[4] *In re Asbestos Litigation*, 2006 WL 1214980 at *2.

DOCS_DE 126204v.1

slipping[5] on broken up concrete. The dangers of slipping on broken up concrete is a matter within the common knowledge of ordinary people. Defendant, therefore, is entitled to summary judgment because it owed no duty to Plaintiff.

### III. DEFENDANT IS ENTITLED TO THE PROTECTIONS OF THE STATE TORT CLAIMS ACT

7.  Even if Plaintiff is able to establish that Defendant owed her a duty and is liable to her pursuant to § 343, Defendant is a state entity entitled to the protections of the State Tort Claims Act. 10 *Del. C.* § 4001, 4003. School Boards are protected from the Act with respect to discretionary acts committed in good faith, in the course of the performance of official duties and without gross or wanton negligence. *Martin v. State*, 2001 WL 112100 at *5 (Del. Super. Ct.) (Exh. 8). Plaintiff has the burden of proving the absence of one or more of these elements. *Id.* Plaintiff's complaint does not allege that Defendant failed to act in good faith, or with gross or wanton negligence. The only allegation made in the complaint is that the acts at issue were ministerial acts. Consequently, this is the only element on which Plaintiff relies to establish that Defendant is not protected by the Act.

8.  A ministerial act is an act performed in a given set of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or the exercise of individual judgment upon the propriety of the act being done.[6] A discretionary act, on the other and, is one which involves the implementation of a policy or goal through a choice of methods.[7]

---

[5] *See* Exh. 5 (T.M. Tr. at 14-15) (wherein Plaintiff stated that she slipped on the loose concrete).
[6] *Martin*, 2001 WL 112100 at *5.
[7] *Knoll v. Wright*, 1988 WL 71446 at *1 (Del.) (Exh. 9). *Cf. Scarborough v. Alexis I. DuPont High School*, 1986 WL 10507 at *2 (Del. Super. Ct.) (Exh. 10) (stating that a discretionary act is one where there are no hard and fast rules as to the course of conduct a person must take or not take); *Jester v. Seaford Sch. Dist.*, 1991 WL 269899 at * (Del. Super. Ct.) (Exh. 11) (stating that discretionary acts are those which require some determination or implementation which allow for a choice of methods, while ministerial acts are either mandatory or routinely required).

DOCS_DE 126204v.1

9.  In this case, even if Defendant owed Plaintiff a duty to maintain the sidewalk, the implementation of this duty can only be accomplished through a choice of methods, based upon the expected uses of the facility. With respect to Plaintiff, neither her husband nor Defendant expected that the stairs would be used during the abatement project. Consequently, Defendant made a decision, exercising its discretion, not to repair the stairs or otherwise prevent access to the stairs prior to the building being demolished.

10.  Similarly, to the extent Defendant had a duty to inspect for hazardous conditions and warn of concealed conditions about which Defendant knew, that Plymouth Environmental and its employees did not know, and could not reasonably have been expected to know, the rule itself can only be invoked using the exercise of judgment.[8] The duty requires the exercise of judgment/discretion to determine: a) whether the condition is a concealed condition, and b) whether the independent contractor's employees could reasonably be expected to know of the condition. These determinations involve the exercise of discretion. Even if Defendant had a duty to provide a safe work area, repairs need to be made or warnings given only if, after exercising discretionary judgment, Defendant determined that the condition was concealed and the Plaintiff did know, nor could reasonably be expected to know, the dangers associated with walking on broken concrete.[9] As such, the function is not ministerial.

11.  In her Complaint, Plaintiff sites to 14 *Del. C.* § 1055 and contends that Defendant violated this statute. § 1055 states:

---

[8] *See Martin*, 2001 WL 112100 at *6 (stating that actions involving the exercise of judgment are discretionary actions).

[9] *See Martin*, 2001 WL 112100 at *6 (holding that a statute requiring State social service employees to investigate and "take necessary action" to prevent child abuse imposed a ministerial duty to investigate and protect children from further abuse, only if at the discretion of the investigating employee the report of abuse is deemed valid).

DOCS_DE 126204v.1

> The school board of each reorganized school district shall provide for the care of the buildings, grounds ... and other school property and shall maintain the same in accordance with the standards adopted by the Department. The school board shall make all repairs to school property, purchase all necessary furniture and provide for adequate heating and proper ventilation of the buildings.

12. Plaintiff's reliance on § 1055 as a mandate establishing a ministerial duty is misplaced because Plaintiff has failed to identify any regulations adopted by the Department which have not been followed. Moreover, the provisions of § 1055 are not mandatory, they are directory.

13. Although *Scarborough* and *O'Connell*[10] hold that § 1055 creates a ministerial duty,[11] this Court should not follow *Scarborough* and *O'Connell* because the court in those cases did not consider whether the use of term "shall" in § 1055 was a mandatory or directory. While the use of the term "shall" generally creates a mandatory duty, in some instances it must be read in a non-mandatory sense.[12] "Where prospective action by government employees is involved, the word 'shall' may be given a merely directory meaning, if the law's purpose is the protection or organization of government by guidance of its officials rather than the granting of rights to a private person."[13]

14. The court in *Heaney* applied this principle with respect to an ordinance directing the City of Wilmington to maintain all city grounds. In *Heaney*, the estate of a decedent brought

---

[10] *O'Connell v. LeBloch*, 2000 WL 703712 (Del. Super. Ct.) (Exh. 12)
[11] *See Scarborough*, 1986 WL 10507 at *3 (stating that because the school had a duty to provide a reasonably safe premises to its invitees and to give warning of concealed dangers and 10 *Del. C.* § 1055 required that the defendant maintain the property, the act of inspecting bleachers for defects was ministerial, and not discretionary); *O'Connell*, 2000 WL 703712 at *6 (relying on *Scarborough* and 14 *Del. C.* § 1055 and concluding that the school was mandated by law to maintain its property, thereby creating a ministerial duty to inspect and maintain windows on school property). In *Scarborough*, the plaintiff was injured when she fell through rotted bleachers while attending a football game as the school. In *O'Connell*, the plaintiff was injured when he fell into a wall and his arm went through a window.
[12] *Heaney v. New Castle County*, 1993 WL 331099 at *4 (Del. Super. Ct.) (Exh. 13).
[13] *Id.* (citing *Wooters v. Jornlin*, 477 F.Supp. 1140, 1145 (D. Del. 1979)).

an action against the City and New Castle County after a tree fell on the decedent's car, killing him. The plaintiff, relying on several city and county ordinances, argued that the defendants had a mandatory duty to inspect and maintain the trees in city parks. The ordinance relied upon with respect to the City stated that "[t]he department shall itself, or by contract, maintain and repair all city buildings and grounds."[14] The court held that the term "shall" in the ordinance was directory, rather than mandatory, because the ordinance informed the City what act should be done, but not the manner or time in which it was to be done.[15] As such, the duty to inspect trees involved a discretionary function for purposes of the Municipal Tort Claims Act, 10 *Del. C.* § 4011(3).

15.  This court applied a similar analysis in *Wooters*. In *Wooters*, several homeowners in the Brookmont Farms development brought suit against New Castle County for issuing CO's for houses which were improperly built. The plaintiffs brought suit pursuant to 42 USC § 1983, arguing that the New Castle County Code created a property interest in proper building inspections and that by failing to conduct proper inspections, they were deprived of a property right. The plaintiffs' argument required the Court to determine whether 9 *Del. C.* § 1361 established a claim of entitlement, i.e. a property right, under state law with respect building inspections provided for by the County Code.

16.  The plaintiff's argued that the use of the term "shall" throughout § 1361[16] created mandatory duties. This Court disagreed, holding that when "[a]ffirmative words such as 'shall'

---

[14] *Heaney*, 1993 WL 331099 at *4, n.3 (discussing 1 *Wilm. C.* § 5-400(h)).
[15] *Id.* at *4.
[16] § 1361 stated that the Director of Development shall perform the following functions: 1) the Department . . . shall administer and enforce all statutes . . . for the protection of persons and property . . .; 2) the Department shall (i) issue all forms for applications and receive applications for any license . . .; 3) the Department shall make all inspections except as otherwise specifically provided in this title . . . .

are employed and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised and not to the limits of the powers or jurisdiction itself, they may, and often have been, construed as directory rather than mandatory."[17] Where a statute involves prospective action by government officials the word "shall" may be given a merely directory meaning if the law's purpose is the protection or organization of government by guidance of its officials rather than granting rights to a private person.[18] Viewing the word "shall" within the context of § 1361, the Court held that the word was meant to mean "will," in the directory sense.

17.  Similar to the holdings in *Heaney* and *Wooter*, the use of the term "shall" in 14 *Del. C.* § 1055 is directory rather than mandatory. The statute contemplates future action by government officials and its purpose is the organization of government by guidance of government officials rather than granting rights to private persons. In addition, the statute relates to the manner in which power or jurisdiction vested in the school board is to be exercised, and the term "shall" in § 1055 does not relate to the limits of the powers or jurisdiction itself. As used in § 1055, the term "shall" is intended to mean "will," in the directory sense. Thus, § 1055 is not mandatory and does not preclude Defendant from invoking the protections of the State Tort Claims Act.

18.  Because Defendant did not have a duty to protect employees of independent contractors from obvious dangerous conditions, and because Defendant is entitled to invoke the

---

[17] *Wooters*, 477 F.Supp. at 1145-46.
[18] *Id.* at 1146.

protections of the State Tort Claims Act, the Court should grant summary judgment in Defendant's favor.

                                             Respectfully submitted,

                                             WHITE AND WILLIAMS LLP

                                             */s/ William L. Doerler*
                                             WILLIAM L. DOERLER (#3627)
                                             824 N. Market Street, Suite 902
                                             P.O. Box 709
                                             Wilmington, DE 19899-0709
                                             302-467-4508
                                             Attorney for Defendant Third-Party Plaintiff Milford School District Board of Education

Date: May 19, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES MAHONEY and<br>TINA MAHONEY, h/w<br><br>        Plaintiffs<br>  v.<br><br>BENJAMIN BANNEKER ELEMENTARY<br>SCHOOL and MILFORD SCHOOL DISTRICT<br><br>        Defendants, Third-Party<br>        Plaintiffs<br>  v.<br><br>PLYMOUTH ENVIRONMENTAL CO., INC.<br><br>        Third-Party Defendants | CIVIL ACTION NO. 05-163 GMS<br><br><br>TRIAL JURY OF TWELVE<br>DEMANDED<br><br>E-FILE |

## CERTIFICATE OF SERVICE

I, William L. Doerler, Esquire, do hereby certify that on this 19th day of May, 2006 a copy of the foregoing **DEFENDANT, THIRD PARTY PLAINTIFF MILFORD SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT** were delivered via First Class Mail, postage prepaid and/or E-File and Serve upon:

Marc H. Snyder, Esquire
Frank, Rosen, Snyder & Moss, LLP
8380 Old York Road, Suite 410
Elkins Park, PA 19027

                                              WHITE AND WILLIAMS LLP

                BY: _____
                                            WILLIAM L. DOERLER (#3627)
                                            824 N. Market Street, Suite 902
                                            P.O. Box 709
                                            Wilmington, DE 19899-0709
                                            Phone: 302.467.4508
                                            Attorney for Defendant Third-Party Plaintiff
                                            Milford School District Board of Education