# EXHIBIT 8

Westlaw

Not Reported in A.2d                                                                                                          Page 1
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
(Cite as: Not Reported in A.2d)

C
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Elizabeth MARTIN, individually, and as Executrix of the Estate of Bryan C. Martin, Plaintiff,
v.
STATE of Delaware, State of Delaware Department of Services for Children, Youth and Their Families, State of Delaware Division of Family Services, Thomas P. Eichler, in his personal capacity, Katherine Way, in her personal capacity, and T.J. Whalen, Defendants.
No. 99C-01-275-CHT.

Submitted: June 13, 2000.
Decided: Jan. 17, 2001.

On Defendants' Motion to Dismiss-Granted In Part and Denied In Part.

Shirley A. McDermott-Lundin, Esquire, Wilmington, for the Plaintiff.
Michael F. Foster, Deputy Attorney General, Keith R. Brady, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, for the Defendants.

OPINION AND ORDER
TOLIVER, J.
*1 This 17th of January, 2001, the motions of the Defendants seeking the dismissal of the causes of action set forth in the Plaintiff's complaint, having been briefed and argued, that which follows is the Court's resolution of the issues so presented.

STATEMENT OF FACTS AND NATURE OF THE PROCEEDINGS

The unfortunate and tragic life of Bryan Martin began on September 4, 1992, and ended on January 29, 1997. At the time of his death, he lived with his father, William Martin, and his father's girlfriend, Carol Albanese. The identity of his biological mother has not been revealed in the pleadings thus far. Bryan died as a result of multiple blunt force injuries and complications of acute ethanol intoxication directly inflicted by Ms. Albanese. It was also evident at the time of his demise that he suffered from chronic malnutrition and neglect as well as prior physical abuse.

Both Mr. Martin and Ms. Albanese were subsequently indicted for their roles in bringing about Bryan's death. Mr. Martin was charged with and pled guilty to Endangering the Welfare of a Child. He was sentenced on October 31, 1997 to serve six months in jail followed by four and one-half years of probation. Ms. Albanese elected to go to trial on charges of Murder by Abuse or Neglect First Degree. She was found guilty on January 16, 1998 and sentenced to twenty years in jail and five years of probation following her release from confinement.

The investigation of Ms. Albanese arising out of Bryan's death was not the first time that she was suspected of engaging in child abuse. On at least three occasions prior to that unfortunate event, State authorities received complaints relative to her treatment of children placed at daycare facilities where she worked. One of them involved Bryan.[FN1] In addition, in November and December, 1996, individuals at the daycare center where Bryan was cared for noticed increasingly severe injuries to Bryan. They attempted to report the same by phone to the Department of Services for Children, Youth and Their Families ("DCYF") between November 27 and December 4, 1996.[FN2] Bryan identified Ms. Albanese as the perpetrator of the abuse.[FN3]

> FN1. The investigation into that complaint was apparently concluded without a finding of any abuse.
>
> FN2. Among its other duties, the Department is charged by statute with the responsibility of protecting children whose welfare or safety is at risk. See 31 Del. C. § 303.
>
> FN3. Although Bryan referred to her as "Kiki", it is not disputed that this was his name for Ms. Albanese.

In response to the suspicions of Bryan's daycare providers, an investigation was initiated and T.J. Whalen, then employed as a case worker with DCYF, was assigned to carry out that process. On December

Case 1:05-cv-00163-GMS   Document 36-10   Filed 05/19/2006   Page 3 of 10

Not Reported in A.2d                                                                Page 2
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
(Cite as: Not Reported in A.2d)

3, 1996, Mr. Whalen visited the daycare center, spoke to employees there and examined Bryan. He was not, however, able to complete his investigation within the then existing departmental policy prior to Bryan's death. This policy required that such investigations be concluded within sixty days of initiation.[FN4] In any event, the Department did not take any action to remove Bryan from the Martin home between November, 1996 and the date he died.

> FN4. This is assuming that the investigation began at the time of the calls began in November, 1996.

In addition, it is alleged that Mr. Whalen was unaware of the precise relationship between Bryan and Ms. Albanese, that there had been complaints of abuse against Ms. Albanese and that he was not able to properly interview sufficiently, if at all, the critical participants. The investigation was Mr. Whalen's first and he had not undergone the departmental training course relative to his position before being so assigned. Prior to that he had been employed as a casual and/or seasonal worker.

*2 On January 28, 1999, this litigation was instituted by Elizabeth Martin against certain State governmental entities and persons who were, or who remain, employed by those entities.[FN5] Ms. Martin was Bryan's paternal grandmother and brought suit individually and as the personal representative of Bryan's estate, claiming that the Defendants breached certain duties of care owed to Bryan. Those duties, she alleged, were imposed under Delaware statutory and common law and their breach by the Defendants proximately caused his death. The Plaintiff further claimed that the individual Defendants, based upon those same acts, violated Bryan's civil rights and were therefore liable for damages to the estate by virtue of 42 U.S.C. § 1983.

> FN5. Although the complaint lists twenty-three causes of action, there are actually twenty-four. There are two causes of action nominated as the "Sixth Cause Action". Only one of that total was against Dr. Dearworth.

The governmental entities sued were the State of Delaware, DCYF and its Division of Family Services. The employee defendants were Thomas Eichler, Secretary of DCYF; Kathryn Way, Director of Family Services; and T.J. Whalen, because of his assignment to Bryan's case. They were sued as individuals,[FN6] although it does not appear that they are alleged to have acted or come into contact with Bryan other than as employees of the State of Delaware. The last Defendant was Dr. James Dearworth, a private physician who had examined Bryan during the Summer of 1996.

> FN6. The complaint indicates that Secretary Eichler and Director Way are being sued in their "personal capacit[ies]" but does not attach any such qualifier to Mr. Whalen. Notwithstanding this omission, it is assumed that he is being sued in that capacity as well.

Dr. Dearworth is alleged to have failed to report the physical abuse to Bryan when he examined him as required by 16 Del. C. § 903.[FN7] Bryan was brought to see the doctor by a relative concerned that bruises observed on his body by that relative signified the presence leukemia. No such disease was found after Bryan was examined and subjected to testing.[FN8]

> FN7. Section 903 states:
> Any physician ... who knows or reasonably suspects child abuse or neglect shall make a report in accordance with § 904 of this title.

> FN8. Interestingly, upon examining Bryan, Dr. Dearworth reportedly asked if the child resided in an abusive home and was told by that relative that she did not believe that to be the case. The identity of the informant does not appear in the record as it presently exists. In any event Dr. Dearworth was dismissed as a Defendant by the Court on August 4, 1999.

The complaints against the State Defendants may be segregated into four categories. The first is that, notwithstanding prior complaints and reports of abuse regarding Bryan, no action was taken by the Defendants to protect him from the abuse which ultimately lead to his death. Second, there was a failure to enforce the policies and procedures put into place to protect children like Bryan. Thirdly, the Defendants assigned an improperly trained temporary/seasonal worker, Mr. Whalen, who did not participate in the DCYF training program required of its full-time employees. Finally, to the extent that the employee Defendants did intervene, they did so improperly/negligently.[FN9]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00163-GMS    Document 36-10    Filed 05/19/2006    Page 4 of 10

Not Reported in A.2d                                                                                          Page 3
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
(Cite as: Not Reported in A.2d)

> FN9. There were no allegations of direct involvement by Secretary Eichler or Director Way in the care of or concern for Bryan.

On April 12, 1999, the State Defendants moved to dismiss the Plaintiff's complaint. The motion was premised upon claims of immunity by the governmental and individual Defendants along with the alleged lack of any viable causes of action against those Defendants.

More specifically, the State argues that the complaints against the governmental entities are barred by the Doctrine of Sovereign Immunity, and against the individual Defendants, by the Tort Claims Act.[FN10] The Defendants further claim that they owed no duty to Bryan apart and distinguishable from that owed to the general public. Therefore there was no duty to protect him from the harm that resulted in his death. Further, if it is found that such a duty existed and that the Defendants breached it, none of the acts or omissions complained of proximately caused Bryan's death. Nor does the complaint state a cause of action for mental suffering or other monetary damages given the language of the statute pertaining to wrongful death action, 10 Del. C. § 3724. Lastly, the Defendants have alleged that the Plaintiffs can not establish the existence of a property right with which Bryan was vested and that the Defendants abridged, thereby negating any cause of action via 42 U.S.C. § 1983.

> FN10. 10 Del. C. §§ 4001-4013.

*3 As might be expected, the Plaintiff has opposed the Defendants' motion. In response to the claims of immunity, the Plaintiff acknowledges that the defenses claimed by the Defendants may be available, but argues that since the defenses can be waived, or may in fact not be deemed to be applicable upon investigation into the facts, to resolve the issue at this juncture in the proceedings would be premature. Stated differently, there has been no discovery and the allegations set forth in the complaint are sufficient to withstand the Defendants' motion at this point in time. The Plaintiff similarly argues that the causes of action premised on State tort law are sufficiently pled and it would again be premature to determine the existence of any duty of care owed to Bryan without an opportunity to engage in discovery. Finally, with regard to her federal cause of action, the Plaintiff argues that the Defendants have simply misinterpreted the applicable law.[FN11]

> FN11. In responding to the Defendants' motion, the Plaintiff has conceded the lack of a cause of action arising under the wrongful death statute as set forth in 10 Del. C. § 3724.

DISCUSSION

A motion to dismiss a complaint pursuant to Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief can be sustained, will not be granted unless the plaintiff will not be able to recover under any circumstances susceptible of proof given the allegations raised in that document. Spence v. Funk, Del.Supr., 396 A.2d 967 (1978); and Bissel v. Papastavros' Assocs. Med. Imaging, Del.Super., 626 A.2d 856 (1995), appeal denied, Del.Supr., 623 A.2d 1142 (1993). For purposes of reviewing the complaint, those allegations are accepted as true and the test of sufficiency is lenient. State ex rel. Certain-Teed Prods. Corp. v. United Pac. Ins. Co., Del.Super., 389 A.2d 777 (1978). The nonmoving party is entitled to an opportunity to present material in response. Super. Ct. Civ. R. 12(b).

Where matters outside the pleadings are considered, such a motion becomes a motion for summary judgment and is disposed of pursuant to Rule 56. Shultz v. Delaware Trust Co., Del.Super., 360 A.2d 576 (1976). Here the State filed an affidavit executed by its Risk Manager whose duties include the administration of insurance coverage for all instances where the State has waived its sovereign immunity pursuant to 18 Del. C. Ch. 65. See State's Reply Br ., Ex. A, Aff. of Keith D. Barron. That testimony indicates that the State has not purchased any insurance, appropriated monies for the purchase of insurance or established a program of self-insurance, which would be applicable to the circumstances alleged in the Plaintiff's complaint. Rule 56 therefore applies to the resolution of the State's motion.

It is clearly established law in this State that a motion for summary judgment will only be granted where the moving party establishes there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. Martin v. Nealis Motors, Inc., Del.Supr., 247 A.2d 831 (1968); and Burish v. Graham, Del.Super., 655 A.2d 831 (1994). The facts must be viewed in the light which is most favorable to the nonmoving party, Pullman, Inc. v. Phoenix Steel Corp., Del.Super., 304 A.2d 334

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 4
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
(Cite as: Not Reported in A.2d)

(1973); and the motion will not be granted, even in the absence of any dispute of material fact, where it seems desirable to inquire further into the facts to clarify the application of the law to the facts. *Guy v. Judicial Nominating Comm.,* Del.Super., 659 A.2d 777 (1995). However, the role of the Court is not to weigh evidence, and uncontroverted statements are to be accepted as true. *Battista v. Chrysler Corp.,* Del.Super., 454 A.2d 286 (1982).

### Sovereign Immunity

*4 The Eleventh Amendment to the United States Constitution codified the principle that neither the United States or any constituent state may be subjected to suit without its consent. U.S. Const. Amend. XI. From the earliest point in our State's history, that principle was accepted and written into Delaware's constitutions up to and including that which is presently in effect. *NA-JA Constr. Corp. v. Roberts,* D.Del., 259 F.Supp. 895 (1966).

Specifically, Article I, Section 9 of the Delaware Constitution provides that "[s]uits may be brought against the State, according to such regulations as shall be made by law." Del. Const. Art. I, § 9. 18 Del. C. § 6511, or as it is commonly referred to, the Doctrine of Sovereign Immunity, has been construed as an absolute bar to all suits against the State unless the immunity so conferred is waived by legislative act.[FN12] *Wilmington Housing Auth. v. Williamson* Del.Supr., 228 A.2d 782, 786 (1967). Moreover, waiver statutes are to be strictly construed and limited to the terms of that particular mandate. Enactment of the Insurance Code by the General Assembly as set forth in 18 Del. C. Ch. 65, standing alone, does not constitute such a waiver. It is not deemed to be waived unless and until a specific program of insurance is developed to protect the State against a particular type of wrong that might be committed by its employees. *Kardon v. Hall,* D.Del., 406 F.Supp. 4 (1975); *Turnbull v. Fink,* Del.Supr., 668 A.2d 1370 (1995); *Doe v. Cates,* Del.Supr., 499 A.2d 1175 (1985); and *Raughley v. Dept. of Health & Soc. Serv.,* Del.Super., 274 A.2d 702 (1976).

> FN12. The immunity so conferred includes state agencies as well. *Donovan v. State,* Del.Supr., 358 A.2d 717 (1976).

As indicated above, the Plaintiff does not dispute the existence or definition of Sovereign Immunity. Her argument is that it would be premature to resolve that issue on the present record. She also argues that the State has waived the right to rely on that defense because it has the power to sue and be sued in connection with the operation of the Ferris School.[FN13]

> FN13. The Ferris School is a residential facility for youth who have been legally determined to be delinquent. 31 Del. C. § 5102.

The affidavit of the State's Risk Manager establishes that there is no insurance program in effect which would cover or otherwise apply to the injuries inflicted by the wrongful acts allegedly committed by the instant Defendants. That declaration stands uncontroverted and the Plaintiff has not sought leave to supplement the record with evidence to the contrary. It would not be premature as a result, to decide this issue on the record as it presently stands. And, the only conclusion available under these circumstances, i.e., that there is no insurance coverage, commercially or otherwise which would be relevant here, is that Sovereign Immunity applies.

Equally unpersuasive is the Plaintiff's argument that because the Department has the authority to sue and be sued arising out of its operation of the Ferris School, it has waived the Defense of Sovereign Immunity in the present litigation. In support of that argument, the Plaintiff cites *Masten v. State,* Del.Super., 626 A.2d 838 (1991), *aff'd,* Del.Supr., 616 A.2d 1214 (1992). However, the holding of that case is limited in its application to a waiver of sovereign immunity relative to tortious conduct arising out of the State's management of Ferris. *Id.* at 844. The argument therefore does not impact upon the conclusion reached above. Accordingly, the Defendants are entitled to the entry of judgment in their favor as to Counts V, VI, IX-XI, XIII-XV, XII-XIX and XXI-XXIII against the State, the Department of Services to Children, Youth and Their Families, and the Division of Family Services.

### Tort Claims Act

*5 Defendants Eichler, Way and Whalen have premised their claims of immunity on the Tort Claims Act as set forth in 10 Del. C. Ch. 40. That statute provides immunity for civil claims against State government employees for certain types of activities arising out of the performance of their official duties. Specifically, 10 Del. C. § 4001

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)  
(Cite as: Not Reported in A.2d)

Page 5

provides that no public officer or employee shall be subjected to liability for such acts where:  
(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;  
(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and  
(3) The act or omission complained of was done without gross or wanton negligence; ....

In short, immunity is conferred relative to discretionary acts committed in good faith, in the course of the performance of official duties and without gross or wanton negligence. _Smith v. New Castle County Vocational Technical Sch. Dist., D.Del., 574 F.Supp. 813, 821 (1983);_ and _Fotakos v. Ikbar,_ Del.Super., C.A. No. 90C-JL-95, Herlihy, J. (1992)(Mem. Op. at 4). All three criteria have to be met to provide the immunity so described and the Plaintiff has the burden of proving the absence of at least one of the aforementioned elements. _Jester v. Seaford Sch. Dist.,_ Del.Super., C.A. No. 89C-JA8, Lee, J. (Nov. 4, 1991) (Mem.Op.); and _Vick v. Haller,_ Del.Super., 512 A.2d 249 (1986), _aff'd,_ Del.Supr., 514 A.2d 782 (1986).

Given the fact that the Defendants' motion is now one for summary judgment, the allegations of the complaint, along with any other evidence that has since been added to the record, must be viewed in light of the law as recited above in the light most favorable to the nonmoving party; in this case, the Plaintiff. The questions which must be answered as a result are whether there exist any material disputes of fact and, if not, are the Defendants entitled to judgment as a matter of law as to this cause of action.

The facts concerning the first element, the discretionary nature of the actions of the individual State employees, are not in dispute. Therefore the issue of whether in this context an employee's duties were ministerial or discretionary is appropriately decided at the summary judgment stage because it is a question of law. _Windley v. Potts Welding & Boiler Repair Co. Inc.,_ D. Del., C.A. No. 94-432-SLR, Robinson, J. (Jan. 18, 1996) (Mem.Op.). Ministerial acts are "acts that a person or board performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or exercise of his or their own judgment upon the propriety of the act being done, and a discretionary act is one where there is no hard and fast rule as to course of conduct that one must or must not take." _Scarborough v. Alexis I. DuPont High Sch.,_ Del.Super., C.A. No. 84C-NO-56, Bifferato, J. (Sept. 17, 1986) (Letter Op.) (quoting _State Tax Comm'n of Utah v. Katsis,_ Utah Supr., 62 P.2d 120, 123 (1936); and _Elder v. Anderson,_ 5th Cal. Dist. Ct.App., 205 Cal.App.2d 326, 331 (1962)).

*6 In support of their contention that the actions in question were ministerial, the Plaintiff cites the language of 16 Del. C. § 905(a) that "[u]pon receipt of a report of abuse the State employees _shall_ immediately investigate and take necessary action and _shall_ offer protective social services toward preventing further child abuse or neglect." (emphasis added). She contends that this language leaves no room for interpretation of what the State employees' duties are when they receive a report of abuse. As the Plaintiff points out, the mandate of this statute requires an investigation. However, as is evidenced by the phrase included in the statute "take necessary action," the statute confers upon the employee discretion in the method and manner of carrying out this mandate. Therefore, the ministerial duty called for by the statute is simply to commence an investigation and to protect the child from further abuse, only if at the discretion of the investigating employee, the claim is deemed valid.

The case law on this issue likewise leads to the conclusion that the manner in which a statutory mandate is carried out involves discretionary actions. In _Jester,_ the plaintiff brought an action against her basketball coach for injuries received as a result of participating in an activity ordered by her coach during practice. The court held that a teacher is in fact required to perform ministerial duties; among them the duty to supervise the students' activities. The court nevertheless found that the Act shielded the coach from liability because the _manner_ in which the coach conducted the practice was discretionary. _Jester_ at 4. _See also Scarborough_ at 4.

As applied to the case _sub judice,_ the ministerial act that was required of the State employees was the act of conducting an investigation; which they did. The actions complained of by the Plaintiff however, concern the _manner_ in which the State employees carried out their duty to investigate. An investigation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 6
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
(Cite as: Not Reported in A.2d)

was commenced regarding the reports of abuse. How it was done involved an exercise of judgment and therefore, discretion. The existence of the first element under the Act must be deemed to have been established as a result.

The questions of whether the second and third elements which require that the employee or officer acted or failed to act in good faith and without gross or wanton negligence are more difficult to resolve at this stage of the process. These questions are usually more dependent upon the facts underlying the dispute rather than any statutory pronouncements, and thus are less capable of disposition by summary judgment. *Weirs v. Barnes,* D.Del., 925 F.Supp. 1079 (1996). Such is the case here.

The Plaintiff's complaint recites the events leading up to Bryan's death and the roles of the primary actors and Defendant Whalen therein. It also describes the failings of Defendants Eichler and Way. Actions of each is further described as having been committed with "... ordinary, gross and/or wanton negligence, reckless indifference and reckless conduct, and/or deliberate indifference ...." There were no specific references to acting in bad faith by any of the Defendants.

*7 "Good faith" is defined as honesty of purpose and integrity of conduct. Blacks's Law Dictionary 712 (6th ed.1990); *see also E.I. DuPont de Nemours & Co. v. Pressman,* Del.Supr., 679 A.2d 436, 443 (1995). The allegations set forth in the complaint are pled with sufficient particularity to withstand the Defendants' motion and implicitly constitute allegations of bad faith.[FN14] As such, they bring into dispute the existence of the second element needed to complete the immunity equation. Alternatively, it is apparent given the Defendants' responses to the allegations concerning the mental state of the individual Defendants, further investigation is necessary before the Court can decide the legal question concerning whether those individuals acted in good faith.

> FN14. The Defendants concede that there are no Delaware cases on point relative to the existence of good faith in the context of child care investigations. *See* Defs.['] Opening Br. at 14.

Gross and/or wanton negligence, as the Defendants correctly point out, are defined respectively as conduct that "represents an extreme departure from the ordinary standard of care" or "conscious indifference evidencing an I-don't-care attitude." *See* Defs.['] Opening Br. at 16. (citing *Browne v. Robb,* Del.Supr., 583 A.2d 949, 953 (1990), *cert. denied,* 499 U.S. 952 (1991) (citation omitted); and *Morris v. Blake,* Del.Super., 552 A.2d 844, 847-48 (1998)). The burden on a plaintiff is substantial as is the obligation to plead with particularity. *Jardel Co. Inc., v. Huges,* Del.Supr., 523 A.2d 518 (1987); *see also Harvey v. Rinehart,* Del.Super., C.A. No. 98C-04-007, Lee, J. (Oct. 28, 1999). However, as is the case with the element of good faith, the Court must conclude that the requisite allegations of negligence have been pled with sufficient particularity to withstand the Defendants' challenge in this regard.[FN15] Moreover, and at the very least, it is premature to decide the existence of this element given the paucity of information in the record, the denial by the Defendants that they acted improperly and the fact that most of the evidence is in their possession.

> FN15. This case is distinguishable from Browne upon which the Defendants rely. In Browne, the plaintiff did not plead specific acts and/or omissions. The failure to do so was fatal. *Browne v. Robb,* Del.Supr., 583 A.2d 949 (1990).

In light of the Court's findings relative to the existence of the second and third elements, the individual Defendants are not entitled to the entry of summary judgment in their favor on this issue. The allegations set forth in the Plaintiff's complaint and responses thereto are sufficient at this stage of the process to withhold the cloak of immunity provided by the Tort Claims Act from them. After discovery has been concluded however, the Defendants are free to renew this aspect of their motion.

## 42 U.S.C. § 1983

In Count VII, the Plaintiff alleged that individual Defendants, while acting under color of State law, deprived Bryan of:
i) life;
ii) personal security;
iii) freedom from cruel and unusual punishment;
iv) the right to minimally adequate or reasonable training of employees to ensure Bryan's safety and freedom from abuse.

These deprivations, it is alleged, constituted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00163-GMS    Document 36-10    Filed 05/19/2006    Page 8 of 10

Not Reported in A.2d                                                                                              Page 7
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
(Cite as: Not Reported in A.2d)

violations of 42 U.S.C. § 1983.[FN16] The State Defendants argue that the Plaintiff has failed to state a claim upon which relief can be granted based upon the holding of *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189 (1989). They are, as a result, entitled to the entry of judgment in their favor. The Plaintiff has responded that the Defendants have misinterpreted the holding of *DeShaney* and that it does preclude the claims which she is advancing here.

> FN16. That statute states that:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*8 *DeShaney* involved facts similar to those underlying the instant litigation. There the child, age 4, had been severely beaten and left in a vegetative state by his father. The father had been previously awarded custody following a divorce from the child's biological mother. Prior to that point in time, there had been complaints from health care workers and relatives about possible abuse. There had also been at least one investigation by State authorities who had temporarily taken custody of the child but returned him to his father because they were unable to substantiate the abuse as alleged. This was followed by additional injuries and investigation by the assigned case worker, but no further action was taken to remove the child from the father's care before the final beating.

Suit was instituted pursuant to § 1983 against the Winnebago County authorities, including its Department of Social Services, by the child and his mother. They claimed that the child was deprived of liberty without due process in violation of the Fourteenth Amendment to the United States Constitution based upon the failure of State authorities to intervene when they knew or should have known that the child was being abused by his father. The lower courts had entered judgment in favor of the county officials. The issue presented to the United States Supreme Court was: when is the failure of a state or local government or its agents to provide a person with adequate protective services a violation of that person's right to substantive due process under the law.[FN17]

> FN17. The Court determined that the question was one of substantive due process, not procedural due process, since the Plaintiff had not claimed at any point in the litigation that there had been a denial of the protection to which he claimed entitlement without procedural safeguards. It specifically did not address the latter question.

The Supreme Court agreed with the lower courts. It held:
... [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.... If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 197. Also rejected was the petitioner's argument, based upon prisoner litigation under § 1983, that once the county undertook the responsibility to protect the child and had reason to know of the abuse being visited upon him, it had a constitutionally enforceable duty to do so in a competent fashion. The Court stated:But these cases afford petitioners no help. Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The rationale for this principle is simple enough: When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by the Eighth

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Amendment and the Due Process Clause.... While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them....

*9 *Id.* at 201.

The pronouncements made by the Supreme Court in *DeShaney* are dispositive of the Plaintiff's claims made pursuant to § 1983 at least as to her claim that the Defendants deprived Bryan of constitutionally guaranteed rights without substantive due process. To the extent the Plaintiff has attempted to argue otherwise, she is simply incorrect. The State, including its agencies, and its employees/officers, did not and do not have any constitutional obligation to protect citizens from each other. Nor are there any allegations that the State, or any one acting on its behalf, created or exacerbated the dangers which ultimately led to Bryan's demise. There is no reasonable interpretation of the allegations set forth in the complaint or which exists in the record as it presently stands which would support a contrary finding.

Notwithstanding this conclusion, the Court must decline to grant judgment in the Defendants' favor as to Count VII in its entirety. As pointed out above, the holding in *DeShaney* did not dispose of the question as to whether § 1983 allowed a cause of action for failing to provide the protection afforded by state law in favor of dependent and/or abused children without procedural due process. Here, a permissible reading of Paragraph 80(b)(iv) of Count VII would include the allegation that the rights conferred by 31 Del. C. §§ 303 and 304 were never afforded or were taken away without procedural due process and that Bryan suffered injury as a result. Because the record has not been developed at this point in the litigation, the Court is unable to determine whether the aforementioned laws created a constitutionally protected right, and if so, whether there was an unconstitutional deprivation of the same. It is therefore premature to attempt to resolve these questions at this stage of the litigation and the Defendants' motion is denied to the extent the Plaintiff has alleged a violation of § 1983 based upon procedural due process and rights created by State law.

Legal Duty and Proximate Cause.

The Defendants have argued that they are entitled to have judgment entered in their favor as to Counts I-IV, VIII, XII, XVI and XX, of the Plaintiff's complaint because they owed no specific duty to protect Bryan, therefore, they could not have been negligent as alleged by the Plaintiff. Similarly, if they could not have been negligent in the absence of such a duty, there can be no issue of whether their actions and/or omissions proximately caused any injury to Bryan. The issue which must be resolved as a result is whether the aforementioned duty existed. That is in turn dependent, the parties agree, on whether the Public Duty Doctrine applies.

The Public Duty Doctrine holds that a governmental employee's duty runs to the public; not to specific individuals. Under those circumstances, there can be no liability in tort or otherwise arising out of the performance of that employee's official duties. *Johnson v. Indian River Sch. Dist.*, Del.Super., 723 A.2d 1200 (1998), *aff'd,* Del.Supr., 723 A.2d 397 (1998)(Table). However, an exception to this rule, and thus a duty to specific individuals is created, where facts are established that show:

*10 1. An assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;
2. Knowledge on the part of the municipality's agents that inaction could lead to harm;
3. Some form of direct contact between the municipality's agents and the injured party; and
4. That party's justifiable reliance on the municipality's affirmative undertaking.

*Id.* at 1203. If a party is able to establish facts which meet these requirements, the Public Duty Doctrine does not apply.

Whether a duty existed and whether any acts of the individual Defendants can be said to have proximately resulted in any injury to Bryan, can not be determined at this point in time. It is evident that in order to overcome the presumption that no duty to the public at large is owed, a fact intensive inquiry is required. It is further evident that conducting such an inquiry requires permitting discovery to proceed.

Finally, the determination of proximate cause also requires an examination of the factual background of the case which is not available at this stage of the proceedings without the aid of the discovery process. To attempt to ascertain whether any acts or omissions by the Defendants constituted proximate cause prior to the determination of the existence of a legal duty might result in a needless expenditure of effort even if it were possible upon the record as it presently

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 9
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

exists. Accordingly, the Defendant's motion in this regard must be denied.

### CONCLUSION

The Defendants' motion for summary judgment is granted in favor of the State of Delaware, the Department of Services to Children, Youth and their Families, and the Division of Family Services based upon the Sovereign Immunity of the State. Counts I-IV, VIII, XII, XVI and XX are dismissed with prejudice as a result. Judgment is entered in favor of Defendants Eichler, Way and Whalen as to Count VII which is based upon 42 U.S.C. § 1983 and to that extent contain claims of a deprivation of constitutionally protected rights without substantive due process. However, it is not granted as to claims of deprivation of constitutionally protected interests without procedural due process as are set forth in that count. The Defendants' motion is denied as to their challenge to the balance of the Plaintiff's complaint given the status of the present record and the need for further investigation to assist in the resolution of the applicable legal questions.

It IS SO ORDERED.

Del.Super.,2001.
Martin ex rel. of Estate of Martin v. State
Not Reported in A.2d, 2001 WL 112100 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.