# EXHIBIT 10

Westlaw.

Not Reported in A.2d                                                                                                     Page 1
Not Reported in A.2d, 1986 WL 10507 (Del.Super.)
(Cite as: Not Reported in A.2d)

C
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Judith SCARBOROUGH and Richard W. Scarborough
v.
ALEXIS I. DUPONT HIGH SCHOOL, et al.
Submitted: July 7, 1986.
Decided: Sept. 17, 1986.

Bernard A. Van Ogtrop, Cooch & Taylor, Wilmington, Del.
Mason E. Turner, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del.

VINCENT A. BIFFERATO, Judge.
*1 Red Clay Consolidated School District, a defendant in this matter, has moved for summary judgment. This is the Court's decision on the motion.

On October 6, 1984 plaintiffs Richard W. Scarborough and Judith Scarborough, husband and wife, went to see their daughter perform in the Wilmington High School band during a football game between Wilmington High School and Alexis I. duPont High School. The game was at Alexis I. duPont High School field. After buying tickets at the gate, plaintiffs sat in the bleachers on the visitors' side of the field. The game began. When a player was running toward the goal line, apparently about to score a touchdown, Mrs. Scarborough stood up to watch. Instantly, the wooden bleacher board upon which she was standing gave way, sending her falling to the ground, some ten feet below. She suffered serious injuries.

Mrs. Scarborough noticed nothing unusual about the board prior to her fall. Apparently, there was no warning-no cracking sound, no partial breaking, no gradual splintering. Mr. Scarborough asserts that he examined the board after the accident and it appeared to be rotten.

Defendants contend that they conducted annual inspections of the bleachers, consisting of maintenance persons walking the bleachers to kinesthetically and visually evaluate their condition.

The plaintiffs brought suit against defendants Alexis I. duPont High School and Red Clay Consolidated School District, alleging negligence, in that defendants knew or should have known of the unsafe condition of the board, and failed to exercise reasonable care.

Defendant School District submits that the claim is barred by provisions of the Delaware Tort Claims Act, 10 Del.C. § 4001, et seq., and thus it is entitled to summary judgment. Plaintiffs suggest that 10 Del.C. § 4001, et seq., is inapplicable here, and that the motion should be denied.

Therefore, the issue is whether defendant School District's motion for summary judgment should be granted based upon the Delaware Tort Claims Act.

Under Superior Court Rule 56, summary judgment may be rendered when there is no genuine issue of material fact. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979). When evaluating the basis for the motion, the Court must view the facts in the light most favorable to the nonmoving party. *Sweetman v. Strescon Industries, Inc.,* Del.Super., 389 A.2d 1319 (1978). Therefore, in evaluating this motion, we view the facts in the light most favorable to plaintiffs.

The Delaware Tort Claims Act provides:

Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

*2 (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence;

provided that the immunity of judges, the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute; provided further that in any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

10 *Del.C.* § 4001 (Supp.1984).

Stated simply, this has been interpreted to mean public officials are exempt from suit "when performing official duties involving the exercise of discretion and when performed in good faith and without gross or wanton negligence." Smith v. New Castle County Vocational Technical School District, 574 F.Supp. 813, 821 (D.Del.1983).

The main problem here is deciding whether the defendants' acts were discretionary, and protected by the statute, or simply ministerial and unprotected.

The discretionary/ministerial line of demarcation is necessary to protect public officials from suit under the common law tenet that "the King can do no wrong." Borchard, *Governmental Responsibility in Tort,* 36 Yale L.J. 1 (1926); Parker, *The King Does No Wrong-Liability for Misadministration,* 5 Vand.L.R. 167 (1952).

However, many courts have found difficulty in defining a pithy, easily applied standard to determine what is discretionary and what is ministerial. W. Prosser and W.P. Keeton, *The Law of Torts,* § 132 (5th ed. 1984); see Biloon's Elec. Serv. v. City of Wilmington, Del.Super., 401 A.2d 636 (1979), *aff'd,* Del.Supr., 417 A.2d 371 (1980).

But, in Delaware, this Court has said that the difference between discretionary and ministerial acts is explained by thinking of discretionary acts as those which require some determination or implementation which allows a choice of methods, and ministerial acts as those which simply are routinely or mandatorily required. *Baker v. New Castle Board of Education,* C.A. 80C-JA-11, Stiftel, Judge (Mar. 30, 1981).

Other courts agree with this definition, saying a ministerial act is "one which a person or board performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or exercise of his or their own judgment upon the propriety of the act being done," State Tax Commission of Utah v. Katsis, 90 Utah 406, 62 P.2d 120, 123 (1936); Gibson v. Winterset Community School Dist., 258 Iowa 440, 138 N.W.2d 112, 113 (1965), and a discretionary act is one where there is "no hard and fast rule as to course of conduct that one must or must not take." Elder v. Anderson, 205 Cal.App.2d 326 (1962), 23 Cal.Rptr. 48, 51 (1962). A discretionary act "goes to the essence of governing." State of Missouri, ex rel. Eli Lilly and Co. v. Gaertner, 619 S.W.2d 761 (1981).

*3 The issue is not whether the official's *position* involves the exercise of discretion, but whether the *activities* which the official was involved in at the time of the alleged negligence were discretionary. Simon v. Heald, Del.Super., 359 A.2d 666 (1976).

We must now determine if defendants' bleacher inspections were discretionary or ministerial, under these standards.

The defendants' maintenance personnel were performing functions in obedience to the mandate of legal authority. The defendants have a duty to provide reasonably safe premises for their invitees and to give warning of latent or concealed dangers. DiSabatino Brothers, Inc. v. Baio, Del.Supr., 366 A.2d 508 (1976); Niblett v. Pennsylvania Railroad Company, Del.Supr., 158 A.2d 58 (1960). School property must be maintained. 14 *Del.C.* § 1055. That is routinely or mandatorily required. Therefore, the act of inspecting the bleachers was ministerial, not discretionary. The defendants are not protected by the Delaware Tort Claims Act, and the motion for summary judgment is DENIED. IT IS SO ORDERED.[FN1]

Not Reported in A.2d  
Not Reported in A.2d, 1986 WL 10507 (Del.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 3

> FN1. It should be noted that merely rejecting immunity in no way implies the existence of negligence of defendants. In order for plaintiffs to prevail, they must prove the alleged negligence.

Del.Super.,1986.  
Scarborough v. Alexis I. duPont High School  
Not Reported in A.2d, 1986 WL 10507 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.