# EXHIBIT 11

Westlaw.

Not Reported in A.2d                                                                                           Page 1
Not Reported in A.2d, 1991 WL 269899 (Del.Super.)
(Cite as: Not Reported in A.2d)

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware, Sussex County.
Gregory JESTER, Nancy Jester and Laura M. Jester, a minor by her parents, Gregory Jester and Nancy Jester, Plaintiffs,
v.
SEAFORD SCHOOL DISTRICT, Board of Education of the Seaford School District and Robert Bowers, Defendant.
**Civ. A. No. 89C-JA8.**

Submitted: July 10, 1991.
Decided: Nov. 4, 1991.

Defendants' Motion for Summary Judgment.

Bruce A. Rogers, Fuqua, Yori & Rogers, Georgetown, Delaware, Attorney for Plaintiffs.
Robert K. Pearce, Esquire, Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, Delaware, Attorney for Defendants.

MEMORANDUM OPINION
LEE, Judge.
*1 This is a personal injury action which plaintiffs Gregory Jester, Nancy Jester and Laura M. Jester have brought against defendants Seaford School District ("District"), Board of Education of the Seaford School District ("Board") and Robert Bowers ("Bowers").[FN1] Pending before the Court is defendants' Motion for Summary Judgment on the ground they are immune from suit pursuant to Delaware's Tort Claims Act, 10 Del.C. § 4001, et seq.

FACTS

I begin by noting that plaintiffs set forth some facts in their Answering Brief which they did not support by affidavit or by citation to depositions, interrogatories or any other discovery matters. Defendants, in their Reply Brief, informed the Court that they had reviewed the depositions and could not find these facts therein. Although plaintiffs may have personal knowledge of the facts that they set forth in their brief, these facts are not in the record before the Court, and consequently, the Court will not consider them. Instead, it will set forth the undisputed facts as they appear in the record before the Court.

On January 16, 1987, plaintiff Laura Jester was a ninth grade student attending Seaford High School. Laura was a member of the high school's winter indoor track team. Defendant Bowers was the head coach of the team.

At approximately 4:00 p.m. on January 16, 1987, Laura was participating in a regular practice session for the team. The team, as was its custom, was practicing in the second floor hallway of the high school. Two other coaches besides defendant Bowers were present.

In order to break the monotony of the routine practice, the coaching staff would hold "fun relays." These races included hopping, skipping, crab crawls and piggy back relay races. Toward the end of this particular practice session, the coaches conducted these fun relays. They suggested the team members run piggy back relay races. In performing the piggy back relay race, one girl would carry another girl on her back from one end of the hall to the other. The girls then would switch positions so that on the way back down the hall the girl who had carried on the first leg of the relay was carried on the second leg.

Laura maintained that she and some of the other team members protested among themselves about the piggy back relays. Her personal opposition to them was based on the fact she was tired and did not think she would be able to carry someone on her back. Laura did not directly protest this exercise to the coaches. She does not know if the coaches overheard any of the grumblings regarding the piggy back relays. Nothing in the record establishes they did overhear these protests; therefore, the Court does not find that the coaches overheard the protests.

Laura was being carried by another student. The tile-covered cement floor on which they were running may have been dusty from use during the day. Laura fell off the back of the other student after the other student either tripped, stumbled or otherwise lost her balance. No one knows what caused the other student to lose her balance. Laura's face and chin impacted with the floor first. She suffered injuries which she alleges are serious and for which she seeks

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                   Page 2
Not Reported in A.2d, 1991 WL 269899 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

recovery in this suit.

*2 The three coaches were present during the race and during Laura's fall. Although the complaint alleged a lack of supervision, the plaintiffs have not advanced a lack of supervision in their briefing on summary judgment, and the facts as developed do not evidence any lack of supervision on the coaches' part.

Defendant Bowers never before had had an incident in his coaching career where students had been injured during this type of exercise.

On January 12, 1989, plaintiffs filed their complaint in this action alleging that defendants had negligently breached their duty to use due and reasonable care in the supervision and control of school activities. Specifically, they alleged that defendants were negligent in that:

"a. They supervised and/or controlled school activities in a careless or imprudent manner without regard to obvious risk of danger and injury to Plaintiff, Laura M. Jester.

b. They failed to maintain proper and adequate supervision of the activities of the students including Laura M. Jester.

c. They failed to exercise due care of the safety of students including Laura M. Jester.

d. They failed to recognize the risks of substantial injury to students, including Laura M. Jester, in permitting [the piggy back race]....

e. They failed to adopt or enforce policies prohibiting ... [piggy back relays] for the protection of students, including Laura M. Jester."

Plaintiffs subsequently amended their complaint to allege defendants were aware of the existence of risk of injuries to students, including Laura; their actions were indifferent to the risks; and consequently, their actions constituted gross or wanton negligence.

The parties have undertaken discovery, and defendants now have moved for summary judgment arguing they are immune under Delaware's Tort Claims Act ("the Act").

DISCUSSION

In moving for summary judgment, the moving party initially has the burden of showing no issues of material fact exists. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979). All facts and inferences are viewed in a light most favorable to the non-moving party. *Allstate Auto Leasing Co. v. Caldwell,* Del.Super., 394 A.2d 748 (1978). Once a moving party meets its burden, the burden then shifts to the non-moving party to establish, with specific facts beyond its allegations in the pleadings, that a genuine issue of material fact exists. *Moore v. Sizemore, supra; Lecates v. Hertrich Pontiac Buick Co.,* Del.Super., 515 A.2d 163, 165 (1986). If all the facts, construed in the plaintiffs' favor, do not establish the necessary elements of plaintiffs' claim, then this Court must grant summary judgment in defendants' favor. See *Hazewski v. Jackson,* Del.Super., 266 A.2d 885 (1970).

In 10 *Del.C.* § 4001, it is provided:

"Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as required by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission, conservation district or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, when the following elements are present:

*3 (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or holding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence; ... provided further ... that in any civil action or proceeding against the State or a public officer, employee or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section."

In 10 Del.C. § 4003, it is provided:

"Any political subdivision of the State, including the various school districts, and their officers and employees shall be entitled to the same privileges and immunities as provided in this chapter for the State and its officers and employees...."

Before scrutinizing defendants' argument that the Act applies, this Court first must examine plaintiffs' argument that defendants have waived their right to claim sovereignty under the Act by purchasing insurance coverage. Although the facts are not well-developed on this issue, defendants' answers to Form 30 interrogatories indicate that insurance coverage may be applicable. The Court will assume, for the purposes of this motion, that coverage exists for the harm alleged here.

The school district does not have sovereign immunity. *Beck v. Claymont School Dist.*, Del.Super., 407 A.2d 226 (1979), aff'd., Del.Supr., 424 A.2d 662 (1980). The only immunity the district and the other defendants have is that granted them by the Act. 10 Del.C. § 4001; § 4003. Even those state agencies with sovereign immunity who then acquire insurance so that the immunity is waived pursuant to 18 Del.C. § 6511 have their liability limited by the Act. *Doe v. Cates*, Del.Supr., 499 A.2d 1175 (1985); *Space Age Products, Inc. v. Gilliam*, D.Del., 488 F.Supp. 775, 780 (1980). In other words, the law in Delaware is that the purchase of insurance by a state agency with sovereignty does not mean that that state entity has waived its sovereign immunity under the Act. Consequently, I conclude that a purchase by defendants of insurance does not result in a waiver of sovereign immunity under the Act.

Having reached that conclusion, the Court may now examine whether the Act is applicable to defendants. The plaintiffs in this case have the burden of proving the absence of one of the three elements in 10 Del.C. § 4001. 10 Del.C. § 4001; *Vick v. Haller*, Del.Super., 512 A.2d 249 (1986), aff'd. in part, Del.Supr., 514 A.2d 782 (1986), aff'd. and rev'd. in part on other grounds, Del.Supr., 522 A.2d 865 (1987); *Knoll v. Wright*, Del.Super., C.A. No. 85C-AU-31, Babiarz, J. (December 22, 1987), aff'd., Del.Supr., 544 A.2d 265 (1988). Thus, plaintiffs must show the absence of: (1) either a discretionary act; (2) or action taken in good faith and in the public interest; or (3) action not constituting gross or wanton negligence. Defendants have set forth the facts as developed after discovery and have argued the undisputed facts do not constitute a showing by plaintiffs of the absence of any of these factors. I will examine each factor *ad seriatim*.

*Discretionary versus Ministerial Acts*

*4 The Courts have wrangled with what constitutes discretionary as opposed to ministerial acts. The Superior Court has defined these disparate acts as follows:

"Discretionary acts are those which require some determination or implementation which allows a choice of methods, while ministerial acts are those which simply are routinely or mandatorily required."

*Knoll v. Wright*, supra at 4; *Scarborough v. Alexis I. DuPont High School*, Del.Super., C.A. No. 84C-NO-56, Bifferato, J. (September 17, 1986) at 4; *Baker v. Oliver Machinery Co.*, Del.Super., C.A. No. 80C-JA-11, Stiftel, P.J. (March 30, 1981) at 6-7.

As explained in *Scarborough v. Alexis I. DuPont High School, supra* at 4:

"The issue is not whether the official's *position* involves the exercise of discretion, but whether the *activities* which the official was involved in at the time of the alleged negligence were discretionary. *Simon v. Heald*, Del.Super., 359 A.2d 666 (1976) (Emphasis in the original.)"

In Delaware, a teacher has legal duties to exercise due care to provide for the safety of his or her students and to protect those students. *Adams v. Kline*, Del.Super., 239 A.2d 230 (1968); *Baker v. Oliver Machinery Co., supra* at 7-8. Included within these duties is the duty to supervise the students' activities. *Id.* This latter duty is ministerial, not discretionary. *Baker v. Oliver Machinery Co., supra.* However, the decision whether to have conducted the piggy back relays as a part of the practice session was a discretionary act. *Smith v. New Castle County Vo Tech Sch. Dist.*, D.Del., 574 F.Supp. 813, 822 (1983); *Gasper v. Freidel*, S.D.Supr., 450 N.W.2d 226 (1990); see *Hyman v. Green*, Mich.App., 403 N.W.2d 597, 598 n. 1 (1987); contra *Larson v. Independent Sch. Dist. No. 314, Braham*, Minn.Supr., 289 N.W.2d 112 (1979).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00163-GMS    Document 36-13    Filed 05/19/2006    Page 5 of 6

Not Reported in A.2d
Not Reported in A.2d, 1991 WL 269899 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 4

In this case, the facts do not show, and plaintiffs have not argued, that defendant Bowers failed to supervise the piggy back relays. To the contrary, the facts show three coaches were present when the accident occurred. Furthermore, the facts do not show that the location of the relays was unsafe. Thus, the facts do not establish that defendant Bowers failed to exercise due care to protect the students and/or to provide for their safety.

Remaining is plaintiffs' argument that the activity chosen was dangerous. The choice of activity was within defendant Bowers' discretion. Consequently, plaintiffs have not shown the absence of a discretionary act as to defendant Bowers.

With regard to the other defendants, plaintiffs have alleged they had a duty to develop a policy against piggy back riding.[FN2] Whether to develop such a policy is within the Board and District's discretion. *Knoll v. Wright, supra.* Plaintiffs have failed to establish the absence of a discretionary act on the part of the District or the Board.

*Action Taken in Good Faith and in the Public Interest*

*5 Plaintiffs have not shown an absence of good faith on any defendant's part, nor have they shown that conducting fun relays while practicing for a sport team was not done in the belief that the public interest would be served thereby.

*Action Not Constituting Gross Negligence or Wanton Negligence*

The Supreme and Superior Courts of this state have defined gross negligence and wanton negligence within the context of the Act.

The Supreme Court discussed the terms in § 4001 generally in *Knoll v. Wright, supra* at 3-4:

"Although the concepts of gross negligence and wanton conduct are not identical, each requires a showing of more than mere inattention or callousness. *Jardell Co. Inc. v. Hughes,* Del.Supr., 523 A.2d 518, 530 (1987). Moreover, since the alleged acts of gross negligence and/or recklessness involve errors of judgment, the burden on the plaintiff is a substantial one. *Id.* at 531."

In *Browne v. Robb,* Del.Supr., 583 A.2d 949, 953 (1990), *cert. den.,* 111 S.Ct. 1425 (1991), the Supreme Court explained:

"Gross negligence is a higher level of negligence representing 'an extreme departure from the ordinary standard of care.' (Citation omitted.)"

The term wanton conduct was discussed in *Morris v. Blake,* Del.Super., 552 A.2d 844, 847-48 (1988), as follows:

"To constitute wanton conduct, the behavior must go beyond inadvertence, momentary thoughtlessness, or mere negligence. (Citation omitted.) More importantly, wanton conduct requires behavior which is more egregious than conduct constituting gross negligence. (Citations omitted.) ... [The] definition of wanton-a conscious indifference evidencing an 'I-don't-care attitude'-has been applied repeatedly in Delaware jurisprudence. (Footnote omitted.)"

In this case, the facts taken in a light most favorable to plaintiffs show defendant Bowers decided to have the team members conduct piggy back races. No one had been injured before when participating in such a relay. These facts do not evidence conduct which approaches gross negligence, let alone wanton negligence. Plaintiffs have not attempted to present any facts with regard to the remaining two defendants on the existence of gross or wanton negligence. Thus, plaintiffs have not shown conduct which constituted gross or wanton negligence.

In conclusion, since the facts do not establish the absence of any element of the Act, the Act applies, and defendants are entitled to summary judgment. Stated another way, plaintiffs' action is dismissed on the ground Delaware's Tort Claims Act provides defendants with immunity from this suit.

IT IS SO ORDERED.

FN1. Bowers' correct name is Michael, not Robert.

FN2. Plaintiffs' arguments with respect to the District and Board's potential liability are not specifically addressed; plaintiffs attribute defendant Bowers' actions to them. Consequently, the Court has examined their potential individual liability with regard to the allegations of the Complaint.

Del.Super.,1991.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1991 WL 269899 (Del.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 5

Jester v. Seaford School Dist.  
Not Reported in A.2d, 1991 WL 269899 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.