# EXHIBIT 12

Westlaw.

Not Reported in A.2d                                                                                                Page 1
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)
(Cite as: Not Reported in A.2d)

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Christopher R. O'CONNELL, a minor, by his next friend, Keith O'Connell; and Keith O'Connell and Beatrice O'Connell, Plaintiffs,
v.
Donovan LEBLOCH, a minor; John LeBloch and Brenda LeBloch; the Caesar Rodney School District; the Caesar Rodney Board of Education; William J. Bach, Superintendent of the Caesar Rodney School District; and Harold Roberts, Principal, Caesar Rodney Junior High School, Defendants.
No. C.A. 97C-05-031.

April 19, 2000.

Mary E. Sherlock, and David W. Jones, of Brown, Shiels, Beauregard & Chasanov, and Robert J. Taylor, of Barros, McNamara, Scanlon, Malkiewicz & Taylor, Dover, Delaware, for the Plaintiffs.
Colin M. Shalk, of Casarino, Christman & Shalk, Wilmington, Delaware, for the LeBloch Defendants.
Catherine T. Hickey, and Noel E. Primos, of Schmittinger & Rodriguez, P.A., for the Caesar Rodney School District Defendants.

ORDER

WITHAM, J.

On Defendant's Motion for Summary Judgment. Denied.

*1 Before the Court is a Motion for Summary Judgment filed by the Defendants, Caesar Rodney School District; the Caesar Rodney Board of Education; William J. Bach, then Superintendent of Caesar Rodney School District; and Harold Robert, then principal of the Caesar Rodney Junior High School ("School Defendants").

FACTS

By and large, the facts surrounding this occurrence are not disputed by the parties; however, the facts relating to the extent that the Defendants were aware of the events leading up to the incident are disputed.

At the time of these events, Plaintiff, Christopher R. O'Connell ("O'Connell" or "Plaintiff"), was a fourteen-year-old eighth grader at Caesar Rodney Junior High School. Defendant, Donovan LeBloch ("LeBloch" or "Dendant"), was also a fourteen-year-old student at the same school. On May 18, 1995, during team time at the school, the students, including both Plaintiff and Defendant, were playing practical jokes on one another. After an apparent practical joke, LeBloch attempted to start a fight with O'Connell on May 19, 1995. Nothing ever came of LeBloch's instigation and O'Connell never appraised the school administration of these acts.

On May 22, 1995, after the student's lunch period, Defendant Harold Roberts began dismissing students as part of his supervisory duties in the cafeteria. After leaving the cafeteria, both O'Connell and LeBloch went up the stairs to the second floor of the school building for their next class period. While heading up the stairs, LeBloch was harassing O'Connell and telling Plaintiff that he was going to beat him up. At the first landing of the stairwell, Plaintiff attempted to stop the Defendant's behavior by pushing him away. LeBloch retaliated by hitting Plaintiff. O'Connell again pushed LeBloch in an attempt to stop him. As a result, LeBloch pulled Plaintiff off the stairs by the back of his shirt. Plaintiff then fell off of the bottom stair onto the landing and into the wall behind him. O'Connell's arm went through the window at the bottom of the stairwell landing when he fell backwards. Plaintiff's fall broke the window and severely injured his arm.

Plaintiff was taken to the emergency room due to the injuries to his arm and the subsequent loss of blood. He underwent seven-and-a-half hours of surgery, in which he received four units of blood. Plaintiff ultimately spent ten days in the hospital. Plaintiff also underwent physical therapy and four additional surgical procedures because of his fall at the bottom of the stairwell landing. The stairway where the altercation took place was constructed in either 1967 or 1968.

There is no documentary evidence that the windowpanes of this particular window had been replaced since the time of the original construction of the building. However, there is testimonial evidence that the window pane was broken at least once during a burglary of the Junior High in the past. This was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

before the tenure of Defendant Harold Roberts. From 1968 to the ultimate destruction of the Junior High in 1999, the School Defendants contend that no student or faculty have reported contact with this window or any of its panes of glass.

*2 To the contrary, the Plaintiffs submit that the School Defendants have voluntarily produced no documentary evidence of any prior breakages of the stairwell window in question, including the break that occurred as a result of Plaintiff's contact. The School Defendants admit that the repair invoices of this nature must be kept for five years; yet they have been unable to locate any invoices for the window panes of this particular window.

In addition, Plaintiffs assert that on May 22, 1995, only the glass inside the building was cleaned up, even though there were glass fragments outside the window. The Plaintiffs cite this glass, as well as other glass located outside the window, as evidence that this window had been broken before on various occasions. This evidence, in addition to the testimony of Allen Harrington that the window was broken during a prior burglary, indicates that this window may indeed have been broken prior to the O'Connell incident.

STANDARD OF REVIEW

Superior Court Rule 56(c) provides that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [FN1] The burden is on the moving party to show, with reasonable certainty, that no genuine issue of material fact exists and judgment as a matter of law is permitted.[FN2] When considering a motion for summary judgment, the facts must be construed in the light most favorable to the non-moving party.[FN3] Further, if the record indicates that a material fact is disputed, or if further inquiry into the facts is necessary, summary judgment is not appropriate.

FN1. Super. Ct. Civ. R. 56.

FN2. See *Celotex Corp. v. Cattret,* 477 U.S. 317 (1986); *Martin v. Nealis Motors, Inc.,* Del.Supr., 247 A.2d 831 (1968).

FN3. *McCall v. Villa Pizza, Inc.,* Del.Supr., 636 A.2d 912 (1994).

DISCUSSION

The School Defendants have enumerated four reasons why summary judgment should be granted in their favor:

1. The testimony of the experts relied upon by the Plaintiffs is not reliable as determined by *Daubert* and *Kumho* and should be excluded;

2. Plaintiffs have not met their burden in demonstrating the essential elements required to prove their claims;

3. Plaintiffs' claims are barred by the Delaware Tort Claims Act; and

4. Plaintiffs' claims for personal injuries were not brought within the applicable statute of limitations.

The Court will address these issues in order.

1. ADMISSIBILITY OF EXPERT TESTIMONY

Delaware Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, the testimony of an expert is appropriate "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." [FN4] D.R.E. 702 is identical to its federal counterpart. The United States Supreme Court interpreted Federal Rule of Evidence 702 in *Daubert v. Merrell Dow Pharm., Inc* .[FN5] The Supreme Court's interpretation of Rule 702 has recently been adopted by the Delaware Supreme Court.[FN6]

FN4. D.R.E. 702; See *Moorhead v. State,* Del.Supr., 638 A.2d 52 (1994) ("The key to admissibility of expert testimony is whether it will assist the trier of fact to understand the evidence or a fact in issue."); But see *Duphilly v. Delaware Elec. Coop., Inc.,* Del.Supr., 662 A.2d 821, 835 (1995) ("[a] witness may testify as to his or her own experience, knowledge and observation about the facts of the case without giving

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00163-GMS   Document 36-14   Filed 05/19/2006   Page 4 of 8

Not Reported in A.2d                                                                                       Page 3
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)
(Cite as: Not Reported in A.2d)

'expert testimony' as defined in the rules of evidence.").

FN5. 509 U.S. 579 (1993).

FN6. See M.G. Bancorporation, Inc. v. Le Beau, Del.Supr., 737 A.2d 513 (1999); see also State v. Steen, Del.Super., C.A. No. 99A-04-016, Barron, J. (Jul. 29, 1999); Pfizer Inc. v. Advanced Monobloc Corp., Del.Super., C.A. No. 97C-04-037, Quillen, J. (Sept. 2, 1999) opinion corrected at Del.Super., C.A. No. 97C-04-037, Quillen, J. (Sept. 24, 1999).

*3 Daubert stated that the trial judge is to act as a "gatekeeper" when dealing with the testimony of an expert witness.[FN7] In so doing, the Court overruled previous Supreme Court jurisprudence that made the standard of admissibility the "general acceptance" of the methodology of the expert in their particular field.[FN8] The Court found that "[a] rigid 'general acceptance' requirement would be at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion testimony.' " [FN9]

FN7. Daubert at 597.

FN8. See Frye v. United States, U.S. S.Ct., 54 App.D.C. 46, 293 F. 1013 (1923).

FN9. Daubert at 588, citing, Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988).

In Daubert, the Court thought the inquiry envisioned by Rule 702 was a flexible one. "Its overarching subject is the scientific validity and thus, the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." [FN10] The Daubert Court offered a four-part test for expert testimony to be admissible. The first hurdle is whether the theory or technique of the expert has been tested. The second question is "whether the theory or technique has been subjected to peer review or publication." The third factor is the known or potential rate of error of the technique utilized. "Finally, 'general acceptance' can yet have a bearing on the inquiry.[FN11] A 'reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.' " [FN12]

FN10. Id. at 594-95.

FN11. Id.

FN12. Id., citing, United States v. Downing, 753 F.2d 1224, 1238 (1985).

The facts of Daubert involved scientific expert testimony. The case was silent on whether the test espoused by the Court was applicable to all experts proffering an opinion before the Court. As a result, the Courts of Appeal were not in unison on whether the criteria enumerated in Daubert was exclusive to scientific experts, or pertained to all experts offered to the Court. The Supreme Court has recently clarified that the Daubert decision is to apply to all experts, regardless of their field of expertise. In Kumho Tire Co., Ltd. v. Carmichael,[FN13] the Court held that all experts were to be subjected to the inquiry in both Daubert and Federal Rule of Evidence 702.

FN13. 526 U.S. 137 (1999).

The approach envisioned by Kumho puts the emphasis of admissibility regarding expert testimony on the trial judge. The Kumho decision makes clear that the test set out in Daubert is not a "definitive checklist." [FN14] Furthermore, the decision asserts that this inquiry must be "tied to the facts" of a particular case, promoting a case-by-case determination of admissibility. The rationale of Kumho is to give the trial judge "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." [FN15] The entire analysis of expert testimony is examined in light of the fact that "abuse of discretion is the proper standard by which to review a district court's decision to admit or exclude scientific evidence." [FN16]

FN14. Id. at 1175.

FN15. Id. at 1176.

FN16. General Elec. Co. v. Joiner, 522 U.S. 136 (1997).

*4 When determining whether an expert meets the criteria set out in Daubert, Rule 702 must be read in conjunction with Rule 705, which states in pertinent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00163-GMS    Document 36-14    Filed 05/19/2006    Page 5 of 8

Not Reported in A.2d                                                                                       Page 4
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)
(Cite as: Not Reported in A.2d)

part, "[a]n adverse party may object to the testimony of an expert on the ground that he does not have a sufficient basis for expressing an opinion. He may, before the witness gives his opinion, be allowed to conduct a voir dire examination directed to the underlying facts or data on which the opinion is based." [FN17] At the present time, the parties have briefed the qualifications of the Plaintiffs' three liability experts in grave detail. The School Defendants contending that these experts are not reliable to give an expert opinion regarding the standard of care in this case; the Plaintiffs contending that these experts' opinions are reliable as contemplated by *Daubert* and *Kumho.*

FN17. DRE 705(b).

The Comments to Rule 705 make clear that a voir dire examination of the proffered expert is left to the sole discretion of the trial judge.
The judge, in his discretion, may permit voir dire examination in the presence or out of the presence of the jury to ascertain if there are sufficient underlying facts or data in the record to permit the expert to testify as to his opinion.... It is anticipated that the voir dire examination will be limited to establishing that there is sufficient evidence to permit the expert to express an opinion. Care must be taken to avoid having the jury hear the ultimate opinion at the time of voir dire.[FN18]

FN18. Comment to DRE 705.

Although it may be arguable that current Delaware case law is developing on this issue, persuasive case law exists from surrounding jurisdictions, in addition to Rule 705, to convince this Court to require a voir dire examination of the Plaintiffs' three liability experts before the Court determines whether there is a reliable basis for their proffered opinions. When the Eastern District of Pennsylvania was confronted with this identical issue, the District Court stated that "in order for the Court to fulfill its duty as the 'gatekeeper' of expert testimony, it must hold a hearing outside the presence of the jury prior to trial pursuant to Federal Rule of Evidence 104(a) to further examine the admissibility of [the expert's] report or expert testimony." [FN19]

FN19. *Bruno v. Merv Griffin's Resorts Int'l Casino Hotel,* E.D. Pa., 37 F.Supp.2d 395, 398 (1999).

This position is consistent with the Third Circuit's decision in *In re Paoli R.R. Yard PCB Litigation* where Judge Becker reversed the District Court's original decision to exclude all of the plaintiffs' expert testimony because the court did not hold voir dire examinations of the experts to sufficiently develop the record.[FN20] On remand, the District Court conducted five days of *in limine* hearings discussing the reliability of the plaintiffs' expert opinions. This Court believes that this is the proper procedure to undertake when determining the admissibility of expert testimony.

FN20. 3rd Cir., 35 F.3d 717, 732 (1994).

Therefore, Defendant's Motion for Summary Judgment with regard to the exclusion of the Plaintiffs' three liability experts is *denied* because the record is not fully developed with regard to the qualifications of the experts and the underlying data upon which they base their opinions. The Court is going to defer to the *in limine* hearing to determine the admissibility of the expert testimony closer to the trial date. The Court will hold the hearing outside the presence of the jury, but the parties and the Court need to decide whether the *in limine* hearing should be conducted before trial or at the time the expert witness is scheduled to testify.[FN21]

FN21. The Court is in no way offering an opinion as to the admissibility of the experts' ultimate opinions in this case. I am merely deciding that procedurally this issue is not yet ripe to be decided and the record needs to be further developed before I make a decision.

2. PLAINTIFFS' FAILURE TO MEET THE ESSENTIAL ELEMENTS OF THEIR CLAIM

*5 The School Defendants assert that the Plaintiffs have not met their burden in coming forth with evidence to demonstrate that the School Defendants breached a duty owed to the Plaintiffs in a way that proximately caused the Plaintiffs' injuries. The first basis for this contention by the School Defendants is that since the Plaintiffs' expert testimony is inadmissible, they have not put forth any evidence to show that the School Defendants knew that this window had been previously broken or that this window was located in a hazardous location or that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Not Reported in A.2d                                                                                                    Page 5
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)
(Cite as: Not Reported in A.2d)

this stairwell was not adequately supervised. The School Defendants also submit that O'Connell and LeBloch were the sole proximate cause of the injuries and that the action of the School Defendants played no role in the injuries sustained by O'Connell. However, since the Court has already ruled that whether the Plaintiffs' experts are reliable is an issue that is not yet ripe to be decided by the Court, the issue of whether the Plaintiffs have met their *prima facie* case of proving reckless conduct is not yet ripe either.

In the case *sub judice,* the Plaintiffs are relying on the testimony of three liability experts to prove their claims. According to the Plaintiffs, these three experts are going to render opinions that opine that the School Defendants should have supervised the stairwell in question to prevent occurrences like the one before us, that the window at the bottom of the stairwell was located in a hazardous area since it could have been contacted by students in a manner depicted in the case before this Court, and that the School Defendants knew or should have known that this window was broken in the past and could have been broken again in the future.

If the jury believes the testimony of these experts, the Plaintiffs may very well be successful in demonstrating that the School Defendants acted in a reckless manner. Since the testimony of these experts has not been excluded or included by the Court at this time, it would not be appropriate for the Court to now determine whether the Plaintiffs have met their *prima facie* burden before deciding whether the testimony of these experts is reliable or not.

Conversely, it does not follow that if the testimony of the Plaintiffs' experts is excluded, that the Plaintiffs cannot meet their burden. Since the Defendants have not proffered any expert testimony to dispute the contentions of the Plaintiffs and opine that the Plaintiffs' evidence is insufficient, I will allow the Plaintiffs' case to go to the jury on whether the alleged negligence of the School Defendant's rises to a level of gross negligence representing "an extreme departure from the ordinary standard of care." [FN22] If, at the close of the Plaintiffs' case-in-chief, the School Defendants still believe that the Plaintiffs have not met their burden, the several Defendants have the right to move for a judgment as a matter of law in their favor. Therefore, the School Defendant's Motion for Summary Judgment with regards to the Plaintiffs' failure to meet their *prima facie* burden is *denied* because the Court is not ruling on the admissibility of the Plaintiffs' proffered expert testimony at this point in time and that ruling will have an impact on what evidence the Plaintiffs will be able to put on at trial.

> FN22. *Brown v. Robb,* Del.Supr., 583 A.2d 949, 953 (1990), *cert. den.,* 499 U.S. 952 (1991).

3. DELAWARE TORT CLAIMS ACT

*6 The School Defendant's next assertion is that the Plaintiffs' claims are barred by the Delaware Tort Claims Act ("Act"). The Act which is applicable to the School Defendants via 10 Del. C. § 4003 sets out the limitation on civil liability in 10 Del. C. § 4001.[FN23]

> FN23. 10 Del. C. § 4001. Limitation on civil liability.
> Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise ... in any civil suit or proceeding at law ... where the following elements are present:
> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;
> (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and
> (3) The act or omission complained of was done without gross or wanton negligence; ... the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

A state entity, such as a school, will be protected by the State Tort Claims Act whenever it performs a discretionary act in good faith and without gross negligence. When a policy is implemented by a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  Page 6
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

school, the school is required to follow that policy, making its actions with regard to that policy ministerial and not discretionary in nature. Once a policy is determined to be ministerial, the State Tort Claims Act no longer provides protection for the school and it can be held liable upon the jury's finding of negligence.[FN24]

> FN24. *Whitsett v. Capital Sch. Dist.,* Del.Super., C.A. No. 97C-04-032, Vaughn, R.J. (Jan. 28, 1999) (ORDER) at 1.; *See Chinski v. New Castle County Vo-Tech Sch. Dist.,* Del.Super., C.A. No. 92C-05-009, Del Pesco, J. (Mar. 7, 1996) (Letter Op.) at 10; *Scarborough v. Alexis I. DuPont High Sch.,* Del.Super., C.A. No. 84C-NO-56, Bifferato, J. (Sept. 17, 1986) (Letter Op.).

The School Defendants submit that their activities were grounded in matters concerning the determination of policy, the enforcement or interpretation of statutes, rules and regulations, and the implementation of policies or goals through a choice of methods. These all being discretionary decisions which would be protected by the Act. On the other hand, the Plaintiffs assert that the acts complained of in their complaint are ministerial acts that are not protected by the immunity contemplated by the Act.

In *Scarborough,* the Superior Court undertook a legal analysis of determining what is a discretionary act and what is a ministerial act. [FN25] After the differences were enunciated, the Court stated "[t]he defendants' maintenance personnel were performing functions in obedience to the mandate of legal authority. The defendants have a duty to provide reasonably safe premises for their invitees and to give warning of latent or concealed dangers." [FN26] This Court agrees with the holding of *Scarborough* that school property must be maintained by mandate of law.[FN27] As the Court in *Scarborough* found, the act of inspecting bleachers is ministerial and not discretionary. Accordingly, I find that the act of inspecting and maintaining the windows of the school is ministerial and not discretionary. The School has to maintain the upkeep of its building, thus they had no discretion in whether to effectuate this duty or not. Therefore, the School Defendants are not protected by the Act, and their Motion for Summary Judgment in that respect is *denied.*

> FN25. *See Scarborough* at 1-2.

> FN26. *Id.* at 2; *See also DiSabatino Bros., Inc. v. Baio,* Del.Supr., 366 A.2d 508 (1976).

> FN27. 14 *Del. C.* § 1055. Maintenance of school property.
> The school board of each reorganized school district shall provide for the care of the buildings, grounds, equipment, apparatus and other school property and shall maintain the same in accordance with the standards adopted by the Department. The school boards shall make all repairs to school property, purchase all necessary furniture and provide for adequate heating and proper ventilation of the buildings.

### 4. STATUTE OF LIMITATIONS

The final argument espoused by the School Defendants in support of their Motion for Summary Judgment is that the Plaintiffs' claims were not brought within the applicable statute of limitations. The Complaint in this action was filed on May 22, 1997. The injuries to the Plaintiff were sustained on May 22, 1995. According to 10 *Del. C.* § 8119, "[n]o action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained...." It is the School Defendant's assertion that since the Plaintiff is contending that this course of events began on May 18, 1995, that the claim was not brought within two years of its occurrence. However, the School Defendants are ignoring the plain language of the statute.

*7 Notwithstanding the fact that this affirmative defense may be time barred since it was not pleaded in the School Defendant's Answer, Section 8119 states that the action must be brought within two years of the date "upon which it is claimed that such alleged injuries were sustained." The alleged injuries in the instant case occurred on May 22, 1995. The complaint was filed on May 22, 1997, two years after the incident. The fact that there may have been some prior dealing between O'Connell and LeBloch before the injuries occurred does not negate the fact that the alleged injuries were sustained on May 22, 1995. Therefore, the School Defendant's Motion for Summary Judgment is *denied* on this ground as well.

In conclusion, the School Defendant's Motion for Summary Judgment is *denied* as to all counts. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 7

sole issue left for the Court to decide prior to trial is when the *in limine* hearing will be conducted to determine the admissibility of the Plaintiffs' proffered expert testimony.

IT IS SO ORDERED.

Del.Super.,2000.  
O'Connell v. LeBloch  
Not Reported in A.2d, 2000 WL 703712 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.