IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES MAHONEY and<br>TINA MAHONEY, h/w<br><br>      Plaintiffs<br><br>v.<br><br>BENJAMIN BANNEKER ELEMENTARY<br>SCHOOL and MILFORD SCHOOL DISTRICT<br><br>      Defendants, Third-Party<br>      Plaintiffs<br><br>V.<br><br>PLYMOUTH ENVIRONMENTAL CO., INC.<br><br>      Third-Party Defendants | C.A. No.:    05-163 GMS<br><br>TRIAL JURY OF TWELVE<br>DEMANDED |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT/THIRD-PARTY PLAINTIFF MILFORD SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, James and Tina Mahoney, through their undersigned attorney, Marc H. Snyder, Esquire, submit their memorandum of law in opposition to defendant/third-party plaintiff's Motion for Summary Judgment, and aver as follows:

### I.   INTRODUCTION

On July 15, 2003, plaintiff, Tina Mahoney sustained serious and permanent personal injuries to both knees, when she was caused to slip and fall down from the platform leading to the bottom of the exterior steps, of the Benjamin Banneker Elementary School (Banneker School).  The incident occurred during the course and scope of plaintiff's employment with

Plymouth Environmental Co. (Plymouth). (Several photographs of the exterior stairs - taken shortly after the accident - are attached and marked as Exhibit "A.") The photographs provide graphic visual support of plaintiff's testimony that her right foot was caused to slip on loose gravel, which resulted in plaintiff falling down the steps.

The facts of the incident are straightforward and largely uncontested. Several years ago, the Milford School Board (School Board) decided to tear down the Banneker School, and eventually replace it with a new school at the same site. Prior to demolition, the School Board contracted with Plymouth, to serve as an asbestos abatement contractor, and remove all asbestos from the interior of the Banneker School (hereinafter referred to as "the asbestos abatement project."). In compliance with Delaware regulations, the School Board further contracted with Harvard Environmental (Harvard) to serve as the asbestos engineer to oversee Plymouth's work.

As set forth in plaintiff's hereinabove, defendant knew that during the pendency of the project, the school grounds were going to be used by Plymouth personnel, Harvard personnel and the general public. Defendant had actual knowledge of the latent, defective condition prior to plaintiff's accident. Because of the fact that the school was scheduled for demolition *after* the project, defendant abdicated all responsibility to maintain the school's exterior *during* the project - thus negligently exposing plaintiff to a defective, dangerous condition.

## II.    LEGAL ARGUMENT

### A.    Standards for Summary Judgment

Rule 56C of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" that there are

-6-

no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56C).

In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead-Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)

> To defeat a motion for summary judgment, Rule 56( c) requires the non-moving party to: do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial" ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Elect. Indus. C., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In the instant matter, defendant's motion for summary judgment should be denied because, at the barest minimum, there exist genuine issues of material fact pertaining to the each and every allegation raised in defendant's motion.

## III.   SUMMARY OF FACTS

Plaintiff Tina Mahoney was injured while injured on the defendant's premises. Plaintiff was employed as a laborer, for Plymouth Environmental Co., who contracted with defendant to abate asbestos in the Banneker School, prior to the school's demolition.

By way of background, plaintiff arrived at the job site, on June 30, 2003. Her accident occurred on July 15, 2003. Plaintiff testified that she was required to use the "cafeteria, gym door (Exhibit "A"), because a closer, lower level exit was blocked off by an area of containment. Plaintiff testified that she had never used this particular door, nor walked down the subject steps, prior to her accident. (Tina Mahoney (T.M.), dep transcript attached hereto as Exhibit "B", at 6)..

Plaintiff James Mahoney was Plymouth's supervisor on the abatement project. James Mahoney testified that this was the first, and last, time that any of his employees used the subject steps. After the accident, James Mahoney place barricade tape around the steps. Mahoney testified that he did not put up the tape before his wife's accident, because he did not realize there was an issue with the steps until after plaintiff's accident occurred. (James Mahoney (J.M.) dep transcript attached hereto, as Exhibit "C", at 44-48).

James Mahoney testified that he only checked for hazards *inside* the building, and was not aware of the subject stairway's dangerous condition until *after* his wife's accident. (J.M. dep, at.47. In addition, Duane Camby, Harvard's project manager, testified that his pre-job walk-around with Mahoney did not include the exterior of the building. (Duane Camby dep transcript attached hereto as Exhibit "D", at 32).

The School District, on the other hand, had longstanding knowledge of the stairway's dangerous condition. Emanuel Reid, the School District's chief custodian, testified that he recalled seeing broken up concrete in the general situs of plaintiff's accident, as early as April or May 2003. Reid could not recall whether there was any consideration to repair the broken-up concrete. Reid testified that is was within John Marinucci's authority to authorize repairs. Reid did not recall whether he brought this condition to Marinucci's attention. Significantly, Reid

testified that this was the type of condition that would have been fixed by the end of the school year - if the school was not scheduled for demolition after the project. (Emanual Reid dep transcript, attached hereto as Exhibit "E", at 20-24).

Marinucci testified that during the school year, he was aware the steps were broken-up. Marinucci testified that if the school was not being demolished he would have authorized maintenance to repair the steps. However, Marinucci stated that even if he expected Plymouth and Harvard personnel to use the steps, he would **not** have authorized the steps to be repaired. Further, Marinucci never warned Plymouth or Harvard of the stairway's dangerous condition. (John Marinucci dep transcript attached hereto as Exhibit "F", at 37-38)

## IV.    SUMMARY JUDGMENT IS INAPPROPRIATE IN THS MATTER

Defendant has advanced two (2) arguments in support of its motion. Both are without merit. The first argument is that the latent, defective step landing was "obvious" to plaintiff Tina Mahoney, and thus defendant is insulated from liability.

Plaintiff Mahoney testified that the defective condition (i.e., loose gravel) was *not* obvious to her prior to her accident. Mahoney testified that the steps loose gravel, on which her foot slipped, was not visibly noticeable. Plaintiff testified that she was walking down the right side of the steps. She was not able to hold onto the railing due to the fact that she was carrying the box with both hands. Plaintiff recalled that she was able to see the steps, but she "did not notice anything really wrong with them." Plaintiff testified that the condition of the steps did not look like what was depicted in the photographs (Exhibit "A").[4]  ("It didn't look like that. I don't

---

4    Plaintiff James Mahoney testified that he took the photographs of the subject steps shortly after plaintiff's accident.

remember seeing a whole lot of damage to the stairs. I mean, I remember seeing cracks and stuff on it but not really damage to them.") (T.M, dep, at 13-14).

Plaintiff testified that her right foot slipped on a loose piece of concrete on the landing of the steps, adjacent to the railing. Plaintiff testified that when she slipped, a piece of the concrete came loose. ("It felt like the concrete moved under my foot.") Plaintiff fell down the steps and her body rolled into the parking lot. She landed on both of her knees and her elbows. (T.M dep, at 13-14)

Plaintiff further testified although she was able to see the steps, it was not visibly apparent to her that anything was wrong with them. ("I actually could see the stairs, but I didn't, I didn't notice anything really wrong with them. It didn't look like that. I don't remember seeing a whole lot of damage to the stairs. I mean, I remember seeing cracks and stuff on it but not really damage to them."). (T.M. dep, at 13).

Rather, plaintiff testified that her right foot slipped on a loose piece on concrete on the landing of the steps, adjacent to the railing. ("I started walking across an my foot I guess you would say it slipped. The concrete came loose. ... I don't remember seeing this, this big patch gone. ... It felt like the concrete move under my foot.") (T.M. dep, at 14-15).

Based on plaintiff Tina Mahoney's foregoing testimony (as well as the attached photographs), at the barest minimum, there exist a genuine issue of material fact whether the latent, defective step landing, was in any manner, *obvious* to plaintiff, and other similarly situated persons.

Plaintiff's second argument is that defendant is insulated from liability, inasmuch as it had an - allegedly - *discretionary* duty to maintain the defective steps. This argument similarly

-10-

has no merit, and also should be rejected.

As set forth above, defendant had a ministerial duty to maintain or repair the step landing,

or otherwise prevent access to the stairs during the pendency of the asbestos abatement project.

It is not in dispute that Delaware law requires each of its school boards to maintain its

property. This requirement is codified in 14 Del. C. § 1055:

### § 1055. Maintenance of school property

   The school board of each reorganized school district shall provide for the care of
the buildings, grounds, equipment, apparatus and other school property and shall
maintain the same in accordance with the standards adopted by the Department.
The school board shall make all repairs to school property, purchase all necessary
furniture and provide for the adequate heating and proper ventilation of the
buildings.

It is well-established under Delaware law, that a school board's duty to maintain school

property, is a *ministerial act*, and thus is a recognized exception to the Delaware Tort Claims

Act. What constitutes a ministerial function, was squarely addressed in Scarborough v. Alexis I.

Dupont High School, et al, Del. Super., Lexis 1343, C.A. No. 84C-NO-56, Bifferato, J. (Sept.

17, 1986 (Letter Op.). In Scarborough, a rotted bleacher board gave way during a football game,

causing an attended to suffer injuries. The principal issue before the court was whether the

bleacher inspection was discretionary or ministerial. The court held:

> The defendants' maintenance personnel were performing functions
> in obedience to the mandate of legal authority. The defendants
> have a duty to provide reasonably safe premises for their invitees
> and to give warning of latent or concealed dangers. (citations
> omitted). School property must be maintained. 14 Del. C. §1055.
> That is routinely or mandatorily required. Therefore the act of
> inspecting the bleachers was ministerial, not discretionary. ...
> Scarborough at 7.

The Superior Court's holding in Scarborough, was favorably cited in O'Connell v.

-11-

LeBloch, Del. Super., Lexis 128, C.A. No. 97C-05-031, Witham, J. (April 19, 2000). In O'Connell, the defendant school board was sued after a student's arm went through a window. In denying the defendants' motion for summary judgment, the court held that "the act of inspecting and maintaining the windows of the school is ministerial and not discretionary. The school has to maintain the upkeep of its building, thus they had no discretion in whether to effectuate this duty or not." O'Connell at 21.

In the instant matter, there can be no real doubt that the defendant abdicated its statutory responsibility to maintain the exterior stairway landing. Marinucci testified that he "never thought" about whether there was going to be foot traffic on the subject steps, and even if he had thought about it, he would not have authorized repair to the subject steps because the school was going to be demolished after the conclusion of the asbestos abatement project. (Marinucci dep, at 46). Further, Marinucci never warned Plymouth or Harvard personnel of the stairway's dangerous condition (i.e., a condition he would have authorized repair if the school was not going to be demolished). As a result, Marinucci and the defendant knowingly exposed plaintiff and similarly situated business and public invitees to a knowingly dangerous situation.

In support of its motion, the defendant cites to Heaney v. New Castle County, Del. Super., Lexis 254, C.A. No. 91C-08-42, Heriihy, J. (July 8, 1993). The defendant's reliance on Heaney is misplaced. Heaney involved an injured Wilmington resident who was killed when a tree on city land fell and crushed a car, and killing its occupant. In granting the city's motion for summary judgment, the court held that there was "no statutory duty to inspect or remove damaged or diseased trees under the Delaware Code." Heaney at 25.

Conversely, in the instant matter, 14 Del. C. §1055 plainly creates a statutory requirement

-12-

for school boards to maintain the steps. As Marinucci plainly admitted in his deposition, the
School Board negligently abandoned its statutory duty to maintain the steps and/or warn of its
defective condition, despite the fact that it had actual knowledge of a latent, defective condition
(i.e., the step landing), and knew the steps could be potentially open for use for Plymouth
employees, Harvard employees[5] and the general public during the pendency of the project.

The defendant's reliance on Wooters is similarly misplaced. Wooters involved plaintiff
homeowners who filed a constitutional claim against government agencies who issued certificate
of occupancies without allegedly enforcing local housing and building codes. Defendant
mistakenly cites Heaney and Wooters to support its argument that defendant's duty is
discretionary and not, ministerial. However, in Scarborough and, later in O'Connell, Delaware
courts have established that a school board's duty to maintain the school grounds is ministerial,
and subject to a landowner's duty, as set forth in Restatement (Second) Torts, § 343.

Restatement (Second) Torts, §343, provides: that a plaintiff must establish (1) the
landowner knew, or reasonably should have known, of a concealed, previously existing
hazardous condition on its premises; (2) the landowner knew, or reasonably should have known,
that the contractor and its employees did not know, and could not reasonably have been expected
to know, of the hazardous condition; and (3) the landowner nonetheless failed to warn the
contractor or take other appropriate action to prevent the injury.

It remains, at the barest minimum, a genuine issue of material fact as to whether the
defendant was in violation of § 343. There should be no issue at all, that defendant had a

---

5    Significant, Duane Camby, Harvard's project manager, testified that he also used the subject steps during
     the project. (Camby dep, at 45).

-13-

ministerial duty to maintain the school grounds, including the subject exterior step landing.

## V.    CONCLUSION

As set forth above, at the barest minimum, there remain genuine issues of material fact as to whether Defendant/Third Party Plaintiff Milford School District Board of Education owed a duty to plaintiff to warn of the latent, defective condition of the exterior steps. Further, it is conclusively established that defendant's duty to maintain the school grounds was a ministerial act, and thus a recognized exception to the State Tort Claims Act.

Respectfully Submitted,

By: _____
MARC H. SNYDER, ESQUIRE (#3791)
Rosen, Moss, Snyder & Bleefeld, L.L.P.
1813 Marsh Road, Suite D
Wilmington, DE 19810
Attorney for Plaintiffs

-14-