

**WILCOX & FETZER LTD.**

In the Matter Of:

# Mahoney
## v.
# Benjamin Banneker Elementary School and Milford School District

C.A. # 05-163 GMS

---

Transcript of:

Emanuel Reid

February 13, 2006

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com



EXHIBIT E

Case 1:05-cv-00163-GMS   Document 38-9   Filed 05/26/2006   Page 2 of 9

Mahoney                                          v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid                  C.A. # 05-163 GMS                         February 13, 2006

Page 1

```
1            IN THE UNITED STATES DISTRICT COURT
2                FOR THE DISTRICT OF DELAWARE
3
4    JAMES MAHONEY and                    )
     TINA MAHONEY, h/w,                   )
5                                         )
          Plaintiffs,                     )
6                                         ) Civil Action
     v.                                   ) No. 05-163 GMS
7                                         )
     BENJAMIN BANNEKER ELEMENTARY         )
8    SCHOOL and MILFORD SCHOOL DISTRICT,  )
                                          )
9         Defendants, Third-Party         )
          Plaintiffs,                     )
10                                        )
     v.                                   )
11                                        )
     PLYMOUTH ENVIRONMENTAL CO., INC.,    )
12                                        )
          Third-Party Defendants.         )
13
14
15           Deposition of EMANUEL REID taken
     pursuant to notice at the law offices of White and
16   Williams LLP, 824 North Market Street, Suite 902,
     Wilmington, Delaware, beginning at 12:00 p.m. on
17   Monday, February 13, 2006, before Kurt A. Fetzer,
     Registered Diplomate Reporter and Notary Public.
18
     APPEARANCES:
19
           MARC H. SNYDER, ESQ.
20         FRANK ROSEN SNYDER & MOSS, L.L.P.
             8380 Old York Road - Suite 410
21           Elkins Park, Pennsylvania  19027
             For the Plaintiffs
22
23                    WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801
24                    (302) 655-0477
```

Mahoney　　　　　　　　　　　　　　　　　　　v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid　　　　　　　C.A. # 05-163 GMS　　　　　　　　February 13, 2006

Page 2

1  APPEARANCES: (Cont'd)
2  　WILLIAM L. DOERLER, ESQ.
　　　WHITE AND WILLIAMS LLP
3  　　824 North Market Street - Suite 902
　　　　Wilmington, Delaware  19801
4  　　For the Defendants and Third-Party Plaintiffs
5  ALSO PRESENT:
　　　JAMES MAHONEY
6  　　TINA MAHONEY
7  　　　- - - - -
8  　　　　EMANUEL REID,
9  　the deponent herein, having first been
10 　duly sworn on oath, was examined and
11 　testified as follows:
12 　　　　EXAMINATION
13 BY MR. SNYDER:
14 Q.  Good morning, Mr. Reid.
15 **A.  Good morning.**
16 Q.  I introduced myself a moment ago.  My name is
17 Marc Snyder.
18 **A.  Hi, Marc.**
19 Q.  I'm the attorney for Tina Mahoney and Jim
20 Mahoney, who were sitting here earlier.
21 　　　We're here to take your deposition
22 testimony because you have been identified as having
23 some information which I believe may be relevant to
24 Ms. Mahoney's personal injury claim against various

Page 3

1  entities known as the Milford School District.
2  　　　Have you ever had your deposition taken
3  before?
4  **A.  No.**
5  Q.  Hopefully it won't be too difficult of a
6  process.  I don't think we're going to be all that
7  long.
8  　　　But before we begin, I'm just going to
9  give you some fairly straightforward instructions and
10 just please listen to the instructions.  Okay?
11 **A.  Mm-hmm.**
12 Q.  There's, as you can see, a court reporter who
13 is seated to your left and ultimately what is said by
14 myself and Mr. Doerler and yourself will make its way
15 to a transcript.
16 **A.  Mm-hmm.**
17 Q.  Which means that you have to verbalize your
18 answers.
19 **A.  Yes. I understand.**
20 Q.  Okay.  Just like you just said, say yes or no
21 when appropriate as opposed to nodding or gesturing or
22 pointing because those types of things you can't make
23 out what they are on the transcript.  Okay?
24 **A.  I understand.**

Page 4

1  Q.  Also, allow me to finish my question in its
2  entirety before you begin answering just so we're not
3  speaking over each other.
4  　　　Is that okay?
5  **A.  I understand.**
6  Q.  If there's a question that I ask you that you
7  don't understand the question, just ask me to repeat
8  or rephrase the question and I'll do so so you do
9  understand the question.  Okay?
10 **A.  I understand.**
11 Q.  If I ask you a question where you don't know
12 the answer, it's perfectly acceptable to say, "I don't
13 know".  We don't want you to guess.
14 　　　Is that okay?
15 **A.  I understand.**
16 Q.  Is there any reason you can think of that the
17 deposition should not go forward?
18 **A.  No.**
19 Q.  Again, I don't think I'm going to be too long,
20 but if for any reason you want to take a break just
21 let me know and we will accommodate you.  Okay?
22 **A.  Sure.**
23 Q.  Your present employer?
24 **A.  Milford School District.**

Page 5

1  Q.  And your position?
2  **A.  Chief custodian.**
3  Q.  How long have you been in that position?
4  **A.  7-1/2 years.**
5  Q.  How many people do you supervise?
6  **A.  Five.**
7  Q.  Back in May, June, July of 2003 did you also
8  supervise five people?
9  **A.  Four.**
10 Q.  Okay.  Who did you supervise?  Let me ask it
11 differently.
12 　　　Were you and all four of the people you
13 supervised at the Banneker School during June and July
14 of 2003?
15 **A.  At the old school?**
16 Q.  At the old school.
17 **A.  Before we moved?**
18 Q.  Before you moved.
19 **A.  Yes.**
20 Q.  Do you know the names of the people?
21 **A.  Yes.  Mr. Anthony Harris.**
22 Q.  Anthony?
23 **A.  Uh-huh.  Yes.**
24 Q.  And is Mr. Harris still employed?

Case 1:05-cv-00163-GMS   Document 38-9   Filed 05/26/2006   Page 4 of 9

Mahoney                                                    v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid                  C.A. # 05-163 GMS                                     February 13, 2006

Page 6

1  A. He's retired.
2  Q. If I wanted to get a hold of Mr. Harris, how
3  would I do so?
4  A. We would have to get his phone number and the
5  place where he lives at now. He lives in Dover.
6  Q. Is that something that if I wanted to get you
7  would be able to provide it to Mr. Doerler?
8  A. Yes.
9  Q. Okay. Next person?
10 A. Roger Morris.
11 Q. Same question as with Mr. Harris.
12 A. He retired.
13 Q. And, again, you would be able to provide the
14 number and address to Mr. Doerler?
15 A. Yes.
16 Q. Okay.
17 A. And which is currently working for us Charlie,
18 Charlie Brewington, Mr. Brewington.
19 Q. The court reporter probably wants the spelling
20 for that.
21 A. Brewington, B-r-e-w-i-n-g-t-o-n.
22 Q. Brewington?
23 A. Yes.
24 Q. And it's correct he still works with you?

Page 7

1  A. Yes. And -- I'm trying to recollect, trying to
2  remember. Carl...
3     I have to remember his name. He's left
4  the school. I don't have his last name.
5  Q. Is he retired?
6  A. No. He's moved on.
7  Q. Between the time that Plymouth Environmental
8  went on the site, which is according to my records
9  June 30, 2003, until the date of Ms. Mahoney's
10 accident, which was July 15, 2003, would you be able
11 to tell me how frequently you were at the school?
12 A. Maybe -- well, we might have been there maybe
13 once, once or twice.
14 Q. When you say, "we," who is "we"?
15 A. Me, Mr. Brewington. We would be there just
16 moving the rest of the furniture out of certain areas
17 of the building.
18 Q. Do you remember the last day you were at the
19 school?
20 A. No.
21 Q. Prior to June 30, 2003 how frequently were you
22 at the school?
23 A. Prior to June 30th?
24 Q. Yes.

Page 8

1     (Mr. and Mrs. Mahoney entered the
2  deposition room at this time.)
3     MR. DOERLER: You're talking about when
4  the school was in session?
5     MR. SNYDER: Let me break down the
6  question.
7  BY MR. SNYDER:
8  Q. Could you approximate or do you know the last
9  day of the school semester?
10 A. It would be June the, say June 6th.
11 Q. Say between June 6th and June 30th, could you
12 approximate how frequently you were at the school?
13 A. Maybe -- well, I recollect maybe once or twice.
14 Q. So you were at the school once or twice between
15 June 6th and June 30th?
16 A. Yes.
17 Q. And you were at the school once or twice
18 between June 30th and July 15th?
19 A. Yes.
20 Q. And you were at the school with Mr. Brewington?
21 A. With Mr. Brewington, yes.
22 Q. Mr. Brewington. How about Mr. Harris or --
23 A. No. They were gone. They had left.
24 Q. Let me just finish.

Page 9

1     Was either Mr. Harris, Mr. Morris or Carl
2  at the school to your memory between June 30th and
3  July 15th??
4  A. Mr. Carl was.
5  Q. Is it Mr. Carl or Carl?
6  A. Mr. Carl. Well, I call him Mr. Carl, but it's
7  Carl, but I forget his last name. He's no longer
8  employed at the school.
9  Q. So it's your recollection that you,
10 Mr. Brewington and Carl were all at the school at some
11 point between June 30th and July 15th. Is that
12 accurate?
13 A. Yes.
14 Q. And it was either one or two times?
15 A. One or two times, yes.
16 Q. Was either Mr. Brewington and/or Carl at the
17 school without you?
18 A. No.
19 Q. During the one or two times you were at the
20 school how long were you at the school?
21 A. Maybe an hour, approximately an hour.
22 Q. So is it an accurate statement that your
23 testimony is you were at the school between one and
24 two hours --

Case 1:05-cv-00163-GMS    Document 38-9    Filed 05/26/2006    Page 5 of 9

Mahoney v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid    C.A. # 05-163 GMS    February 13, 2006

Page 10

1  A. Yes.
2  Q. Let me just finish.
3  A. I'm sorry.
4      MR. SNYDER: Let's go off the record.
5      (Discussion off the record.)
6  BY MR. SNYDER:
7  Q. So it's your recollection that between June 30
8  and July 15 you were at the school between one and two
9  hours in total. Is that accurate?
10 A. Yes.
11 Q. What were you doing between those one and two
12 hours?
13 A. Moving furniture.
14 Q. Where was the furniture located?
15 A. In the cafeteria.
16 Q. Mr. Doerler provided me with a schematic of the
17 Banneker School. Would you be able to show me where
18 the cafeteria is?
19 A. Right there (indicating).
20 Q. Would you just circle that?
21 A. (Witness complies).
22 Q. What steps would you take to get to the
23 cafeteria?
24 A. There was a loading dock. There was a loading

Page 11

1  dock out here (indicating) and a set of steps.
2  Q. Is it these steps (indicating)?
3  A. No.
4  Q. No?
5  A. No.
6  Q. Different steps?
7  A. Different steps.
8      MR. DOERLER: What were just showing him?
9      MR. SNYDER: Just really all of the
10 photographs but specifically Marinucci 5.
11 A. No.
12 Q. So you took different steps to get to the
13 kitchen area?
14 A. Yes. Because we had a loading dock that you
15 could go right in.
16 Q. Did you perform any maintenance around the
17 school between June 30 and July 15th?
18 A. No. Once, once we left the school, we didn't
19 do no more maintenance on the school. Basically, it
20 was turned over. We was moving to the new school so
21 we didn't do no more maintenance.
22     Prior to the grass being cut, but that's
23 by the bat wing, but we didn't do nothing actually to
24 the school itself, no maintenance at all.

Page 12

1  Q. What about -- I'm asking about exterior
2  maintenance.
3      Did you cut the grass between June 30 and
4  July 15?
5  A. No. Not to the school, no. Mm-mm. No.
6  Q. You did not cut any of the grass surrounding
7  the exterior of the school?
8  A. No. The only grass that was cut was by the or
9  past or surrounding the school is what's called the
10 fields with the bat wing, which we didn't have nothing
11 to do with it, that part of it.
12 Q. If there was any storm damage which resulted in
13 trees falling in the parking area or on exterior
14 steps, would you have an expectation that you or your
15 staff would be responsible to clear up the storm
16 damage?
17     MR. DOERLER: I object to the form.
18     You can answer.
19 Q. Again, this would be between June 30 and July
20 15.
21 A. Yes, we would. Yes, we would.
22 Q. Let's say a railing would become dislodged say
23 by vandalism on exterior steps that you know there was
24 going to be traffic up and down during that time

Page 13

1  period, would it be your expectation that you and/or
2  your staff would repair or remedy the dislodged
3  railing?
4      MR. DOERLER: I object to form.
5  A. If it was -- can you repeat that question
6  again?
7  Q. Sure.
8      Let's an exterior, a railing of an
9  exterior stairs was dislodged between June 30 and July
10 15. Would you have an expectation that either you or
11 your staff would be responsible for either repairing
12 or remedying the dislodged railing?
13     MR. DOERLER: Same objection.
14 A. Once we left the school and once it was not our
15 property and we was at the new school, no, no, we
16 wouldn't repair it. It wouldn't fall under my
17 jurisdiction, the repair, because we would not
18 physically be at the school no longer.
19 Q. And what's the basis for your answer? Why do
20 you say that?
21     Did somebody tell you that you were not
22 responsible, you would not be responsible for the
23 example that I provided to you of a dislodged railing?
24 A. No.

Case 1:05-cv-00163-GMS    Document 38-9    Filed 05/26/2006    Page 6 of 9

Mahoney                                                v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid                    C.A. # 05-163 GMS                                          February 13, 2006

Page 14

1    MR. DOERLER: Objection to form.
2  A. Basically, we were moved out of the school, we
3  was moved from the school into the new school and at
4  that time it was demolition and asbestos. So
5  physically realistically we did not have nothing else
6  to do with that school.
7  Q. Did anybody tell you that you would not be
8  responsible for any type of exterior repairs or
9  maintenance of the old school once Plymouth
10 Environmental and Harvard Environmental came on site?
11 A. No. It's just that once we moved from the
12 school our responsibility was switched over to the new
13 school and because it was under construction because
14 of asbestos and the companies that were doing the
15 demolition, we did not have nothing physical else to
16 do with the school.
17 Q. I understand that. That's your understanding.
18 But I'm asking you did somebody provide you with that
19 understanding or is that just your general
20 understanding that you would not be responsible for
21 any type of exterior repairs that may have been needed
22 between that time period?
23 A. That was my general understanding.
24 Q. Did you speak to anybody about that

Page 15

1  understanding?
2  A. No.
3  Q. Did anybody cut the grass or maintain the
4  property after Plymouth Environmental and Harvard
5  Environmental went on the job site on June 30, 2003?
6  A. No. Around the building, no.
7  Q. Again, is it your testimony that you were only
8  in the building for between one and two hours between
9  June 30, 2003 and July 15, 2003?
10 A. Yes, moving furniture.
11 Q. If you felt there was a condition in the
12 exterior of the building that was in need of repair,
13 for example a pothole within the parking area or a
14 dislodged railing or broken concrete on the steps, you
15 indicated that you would not take responsibility for
16 repairing it. But would this be something that you
17 would point it out to somebody else, your observation
18 of the condition?
19    MR. DOERLER: Objection to the form. What
20 time period are you talking about?
21    MR. SNYDER: June 30th to July 15th.
22 A. Could you rephrase that question?
23 Q. Sure.
24    If you observed a condition, and I gave

Page 16

1  you three examples, a pothole in the parking area
2  where cars would park, a dislodged railing of exterior
3  steps or the broken-up concrete of the exterior steps,
4  would those be the types of conditions that you would
5  point out to somebody else your observation?
6     MR. DOERLER: Objection to the form.
7  A. Yes.
8  Q. Who would you point it out to?
9  A. It would have to go to -- you would do the, you
10 would call one of the maintenance men and have them
11 come and inspect it to see what the problem was.
12 Q. This would be maintenance employed by the
13 school district?
14 A. Yes.
15 Q. Sitting here today, do you have any knowledge
16 of where Ms. Mahoney's accident occurred?
17 A. No.
18 Q. Did you review any documents or photographs
19 prior to your deposition?
20 A. No. I mean as far as the steps, no.
21 Q. Not just regarding the steps. Did you review
22 any documents in preparation for your deposition?
23    MR. DOERLER: You mean other than talking
24 to me?

Page 17

1  Q. Aside from any conversations you had with
2  Mr. Doerler.
3  A. No.
4  Q. Did you speak with Mr. Marinucci after his
5  deposition?
6  A. No.
7  Q. I'm going to show you a couple of photographs
8  which were I believe marked as Marinucci 2 through
9  Marinucci 7. Take a moment to look through them and
10 let me know when you have finished.
11 A. (Reviewing photographs).
12 Q. Thanks.
13    Can you just identify for the record the
14 location of these steps?
15 A. Yes.
16 Q. Where were they?
17 A. They were down as you come out of the gym and
18 you come out.
19 Q. Mr. Doerler provided us with a schematic of the
20 Banneker School. And I'll indicate to you that
21 Mr. Marinucci indicated the steps were sort of in the
22 lower right quadrant.
23    Is that consistent with your recollection?
24    MR. DOERLER: You're looking at Marinucci

Case 1:05-cv-00163-GMS    Document 38-9    Filed 05/26/2006    Page 7 of 9

Mahoney                                                                         v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid                            C.A. # 05-163 GMS                                                February 13, 2006

Page 18

1   1?
2       MR. SNYDER: That's correct.
3   A.  Yes.
4   Q.  Now, prior to the end of the school year how
5   frequently, if at all, would you go up and down those
6   steps?
7   A.  Every day. We had kids going out when school
8   was in session and the bus platform, which the bus
9   platform would be right down --
10  Q.  And this is Marinucci 2. Tell me where the bus
11  platform is.
12  A.  The bus platform would be in this area here
13  (indicating). Before the construction there was a bus
14  platform right there (indicating).
15  Q.  Where the dirt is in Marinucci 2?
16  A.  Yes.
17  Q.  Aside from kids going up and down there, is it
18  also accurate that you would go up and down the steps?
19  A.  Yes.
20  Q.  Would this be every day that you would go up
21  and down the steps?
22  A.  Every day that we had bus duty.
23  Q.  Did you go up and down the steps between the
24  last day of school, which I think you indicated was

Page 19

1   June 6th, up until the day that Plymouth Environmental
2   went on the job site, which was June 30th?
3   A.  June 6th? Yes, that would be my last day.
4   Q.  So is it accurate then that between June 6 and
5   June 30 you did not go up and down these steps?
6   A.  That's correct.
7   Q.  Did you go up and down these steps between June
8   30 and July 15?
9   A.  No.
10  Q.  So is it a correct statement then that on or
11  about June 6th was the last day you went up and down
12  these steps?
13  A.  Yes.
14  Q.  I'm just going to refer your attention to what
15  was marked as Marinucci 7.
16      Will you agree with me that there's
17  broken-up concrete in this photograph?
18  A.  Yes.
19  Q.  And if I show you Marinucci 4, that sort of
20  gives a longer view.
21      Do you also agree that there's broken-up
22  concrete that you can observe from that photograph
23  too?
24  A.  Yes.

Page 20

1   Q.  Referring your attention to Marinucci 7, as of
2   the date, the last date that you went down the steps
3   which was on or about June 6, 2003, was the condition
4   of the steps similar to the depiction of the steps in
5   that photograph?
6       MR. DOERLER: I object to the form.
7       You can answer.
8   A.  At that time this (indicating) was, this area
9   right here was deteriorated, but this part here
10  (indicating) was still intact at that time.
11  Q.  I'm going to show you a black and white
12  photograph which your attorney provided me which I
13  believe is a black and white photograph of Marinucci
14  7.
15      I'm going to give you a pen and if you can
16  just circle the area that you believe was broken up as
17  of the last date that you walked down the steps.
18  A.  (Witness complies).
19  Q.  Thank you.
20      MR. SNYDER: We will mark this as Reid 1.
21      (Reid Deposition Exhibit No. 1 was marked
22  for identification.)
23  BY MR. SNYDER:
24  Q.  Was the concrete loose at all to the left of

Page 21

1   the area that you circled as of the last day that you
2   walked down the steps?
3   A.  This here (indicating)?
4   Q.  No. To the left of the circle.
5   A.  As I recollect, no. To the best of my
6   knowledge, no.
7   Q.  Now, when were you aware that the area that you
8   circled, the concrete within that area was broken up?
9   A.  I really can't recollect when. I mean, I
10  noticed it, but I can't recollect what day it was.
11      That's just being honest.
12  Q.  Let me ask it another way.
13      Approximately for how long -- one of the
14  instructions I gave you was not to guess.
15  A.  Okay.
16  Q.  A different instruction which I should have
17  given you was to draw the distinction between a guess
18  and an educated guess. If I were to ask you what I
19  had for dinner last night, that would be a guess.
20      If I were to ask you how tall I was, that
21  would be an educated guess. Okay?
22  A.  Yes.
23  Q.  So if you can give an educated guess for how
24  long prior to June 6th, 2003 that you observed the

Case 1:05-cv-00163-GMS    Document 38-9    Filed 05/26/2006    Page 8 of 9

Mahoney                                                v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid                     C.A. # 05-163 GMS                                February 13, 2006

Page 22

1  condition within the area that you circled, that would
2  be an educated guess and that would be okay.
3         MR. DOERLER: I object to the form.
4         THE WITNESS: Is it okay?
5         MR. DOERLER: You can answer.
6  BY MR. SNYDER:
7    Q. You can answer.
8    A. An educated guess? I would say a month, month
9  and a half.
10   Q. Was there any consideration to repair the
11 broken-up concrete prior to the end of the school
12 year?
13   A. I don't recollect. No. No.
14   Q. What would have been the protocol to repair the
15 concrete?
16       Let me ask it differently. Whose decision
17 would it be?
18   A. It would be a maintenance decision to repair
19 it.
20   Q. Would that have been your decision?
21   A. No.
22   Q. Mr. Marinucci's decision?
23   A. Yes. Yes.
24   Q. If you felt this condition warranted repair,

Page 23

1  would this be the type of thing that you or your staff
2  would have repaired?
3    A. No. It would go to maintenance.
4    Q. Mr. Marinucci?
5    A. Yes.
6    Q. And would he have delegated to you or your
7  staff to repair it or would he have contracted it out
8  to another party?
9         MR. DOERLER: I object to form.
10 Foundation.
11   A. He would have a maintenance person to repair
12 that.
13   Q. Would that be either one of the four people
14 that worked underneath you?
15   A. No.
16   Q. Do you recall whether or not you brought this
17 condition to Mr. Marinucci's attention?
18   A. I don't recall.
19   Q. Do you recall whether anybody brought it to
20 your attention?
21   A. No.
22        MR. DOERLER: When you're saying, "this
23 condition" you're referring to the condition that he
24 circled?

Page 24

1         MR. SNYDER: Yes.
2  BY MR. SNYDER:
3    Q. If the school was not scheduled for demolition,
4  would the condition that you circled be the type of
5  repair that you would have expected to have been made?
6         MR. DOERLER: I object to form.
7         You can answer.
8    A. Yes.
9    Q. Would you have expected it to have been made
10 prior to the end of the school year, within that month
11 or month and a half that you noticed the condition
12 before the end of the school year?
13        MR. DOERLER: Same objection.
14        You can answer.
15   A. Yes. Yes.
16   Q. Sitting here today, do you have any idea what
17 caused the concrete for a person walking down the
18 steps to the left of the circle to have been broken up
19 between the date that you last saw this which you said
20 was about the last day of school and the date the
21 photograph was taken?
22   A. No.
23   Q. Did you have any type of conversations with
24 either Mrs. Mahoney or Mr. Mahoney during the time

Page 25

1  they were at the Banneker Elementary School with
2  Plymouth Environmental?
3    A. I think I may have. We talked about the
4  asbestos removal a couple of times. I remember that.
5    Q. Aside from general conversations about asbestos
6  removal, do you remember any other conversations you
7  may have had with Mr. Mahoney?
8    A. No.
9         MR. SNYDER: I just want to take a break
10 for a moment.
11        MR. DOERLER: No problem.
12        (A brief recess was taken.)
13 BY MR. SNYDER:
14   Q. Mr. Marinucci testified about a yard sale that
15 was conducted from the sale of fixtures and desks and
16 things of that nature.
17        Do you recall that?
18   A. Yes.
19   Q. Where were the fixtures and desks and lights
20 and chairs stored?
21   A. In the gym. In the gym and cafeteria.
22   Q. Who was responsible for carrying the fixtures
23 and lights and desks and chairs from the rooms to the
24 cafeteria and the gymnasium?

Case 1:05-cv-00163-GMS   Document 38-9   Filed 05/26/2006   Page 9 of 9

Mahoney                                                    v. Benjamin Banneker Elementary School and Milford School District
Emanuel Reid              C.A. # 05-163 GMS                February 13, 2006

Page 26

1  A. The custodial staff.
2  Q. That would be you and Mr. --
3  A. Brewington and Mr. Carl.
4  Q. Okay. When did you start transferring that
5  property to the gymnasium and the cafeteria?
6  A. Offhand, sir, I can't remember what dates
7  exactly when I started, but basically when the school
8  shut down we started transferring furniture to the gym
9  and the cafeteria.
10  Q. How much, if any, of the transferring was done
11  prior to the time that Plymouth Environmental went on
12  the job site?
13  A. How much? I can't really say, sir, not to
14  answer. I know they were on the job site, but I can't
15  really say and pinpoint what day exactly. We started
16  moving furniture the day after school shut down.
17  Q. When was the yard sale conducted? Do you
18  remember the date?
19  A. No. It was done on a Saturday. That's the
20  best of my knowledge. I know it was on a Saturday. I
21  can't pinpoint what date it was.
22  Q. Do you remember if it was before or after
23  Ms. Mahoney's accident of July 15, 2003?
24  A. No, I'm not for sure.

Page 27

1        MR. SNYDER: Thanks. I don't have any
2  more questions.
3        THE WITNESS: Thank you.
4        MR. DOERLER: We will read that one too.
5        (Deposition concluded at 12:35 p.m.)
6
7           I N D E X
8  DEPONENT: EMANUEL REID               PAGE
9  Examination by Mr. Snyder              2
10          E X H I B I T S
11  REID DEPOSITION EXHIBIT            MARKED
12  1 Sheet containing two photographs    20
13
    ERRATA SHEET/DEPONENT'S SIGNATURE   PAGE 28
14
    CERTIFICATE OF REPORTER             PAGE 29
15
16
17
18
19
20
21
22
23
24

Page 28

REPLACE THIS PAGE
WITH THE ERRATA SHEET
AFTER IT HAS BEEN
COMPLETED AND SIGNED
BY THE DEPONENT.

Page 29

1  State of Delaware  )
                      )
2  New Castle County  )
3
4        CERTIFICATE OF REPORTER
5
6  I, Kurt A. Fetzer, Registered Diplomate
   Reporter and Notary Public, do hereby certify that
   there came before me on Monday, February 13, 2006, the
7  deponent herein, EMANUEL REID, who was duly sworn by
   me and thereafter examined by counsel for the
8  respective parties; that the questions asked of said
   deponent and the answers given were taken down by me
9  in Stenotype notes and thereafter transcribed by use
   of computer-aided transcription and computer printer
10  under my direction.
11     I further certify that the foregoing is a true
    and correct transcript of the testimony given at said
12  examination of said witness.
13     I further certify that I am not counsel,
    attorney, or relative of either party, or otherwise
14  interested in the event of this suit.
15
16
17        Kurt A. Fetzer, RDR, CRR
           Certification No. 100-RPR
18        (Expires January 31, 2008)
19
    DATED:
20
21
22
23
24