IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES MAHONEY, et al. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: 05-163 GMS |
| ) | |
| v. ) | TRIAL BY JURY DEMANDED |
| ) | |
| BENJAMIN BANNEKER ) | |
| ELEMENTARY SCHOOL, et al. ) | |
| ) | |
| Defendants. ) | |

**THIRD-PARTY DEFENDANT PLYMOUTH ENVIRONMENTAL CO., INC.'S
MOTION TO VACATE DEFAULT JUDGMENT**

COMES NOW, Defendant Plymouth Environmental Co, Inc. (hereinafter referred to as "Plymouth"), by and through its undersigned attorney, and respectfully moves this Court pursuant to Fed R. Civ P. 55(c) and 60 (b) for an Order vacating the default judgment entered against it on August 25, 2005, and in support thereof states the following:

1. Plaintiffs filed their two count Complaint on March 18, 2005. The Complaint alleges that Tina Mahoney, while employed by Plymouth, suffered injury when she fell down an exterior set of stairs at the Benjamin Banneker Elementary School (hereinafter referred to as the "School"). The Plaintiffs' complaint further alleges that the School and the Milford School District (hereinafter referred to as the "District"), as owners of the situs of the incident, negligently maintained the steps, thereby creating the hazardous condition which proximately caused her alleged injuries.

2. The School and the District filed their joint Answer to the Complaint and Third-Party Complaint against Plymouth on May 13, 2005.

3. On March 31, 2003, Plymouth entered into a written contract with the District under which Plymouth agreed to perform certain construction related services at the School's location.

At no time was Plymouth contractually obligated to maintain the exterior of the building which includes the steps where the alleged injury occurred. (See Affidavit of James Kelly, attached hereto as Exhibit "A").

4.  Tina Mahoney was an employee of Plymouth at the time of the alleged incident and acting within her capacity as an employee of Plymouth when she was allegedly injured. (Exhibit "A").

5.  Should the Plaintiffs be able to prove their allegations, the School and District each claim that Plymouth is jointly and severally liable to the plaintiff, as well as owes the School and the District a duty of indemnification under an express, equitable or implied theory of indemnification.

6.  On May 13, 2005, the School and the District sent a request for waiver of service to Plymouth pursuant to Fed. R. Civ. P. Rule 4(d). Although, the waiver was signed by James Kelly, President of Plymouth Environmental, Inc., and returned on July 8, 2005, Mr. Kelly was under the impression that this waiver was made with respect to the ongoing Worker's Compensation claim made by Ms. Mahoney. (Exhibit "A"). Given the fact that Plymouth had paid the worker's compensation claim and Ms. Mahoney had already undergone the related surgeries and returned to full time work, Mr. Kelly thought the worker's compensation matter had either been resolved or would be shortly. (Exhibit "A").

7.  At the time Mr. Kelly signed the waiver he was reasonably unaware that he was signing a waiver of service related to an entirely independent civil matter, and that actual service would not be forthcoming in the new third-party suit. (Exhibit "A").

8.  As the President of Plymouth, a small construction firm, Mr. Kelly is not only responsible

for the daily operations of the company, he is also responsible for evaluating potential work, estimating projects, accounting, making sales, finding the appropriate laborers and allocating crews to the particular job sites, along with generally approving all of the projects undertaken by the company. Although, Mr. Kelly is fully capable of assessing the value of potential jobs, coordinating multiple construction projects while making sure employees and creditors are paid, Mr. Kelly did not accurately assess the FRCP 4(d) waiver of service request which came across his desk nearly two years after the alleged accident occurred and Ms. Mahoney had returned to work. (Exhibit "A").

9. On August 25, 2005, Default Judgement was entered against Plymouth by the Clerk of the Court. Mr. Kelly, however, did not receive any prior notice that the third-party plaintiffs were going to seek an entry of default judgment against Plymouth. Furthermore, notice of the entry of default was not sent to Plymouth until nearly nine months later on May 8, 2006. (See letter from William Doerler to James Kelly, dated May 8, 2006, attached hereto as Exhibit "B"). It was at this time that Mr. Kelly realized that he had made an error in his understanding of the significance of the waiver he had signed. (Exhibit "A").

10. The Third-party plaintiff will not be prejudiced if the Court allows Plymouth to meaningfully participate in the litigation of this claim in so much as the Third-Party plaintiff's theories of defense and litigation strategies will not be affected by the addition of Plymouth as an active party to the case. Due to the fact that the Third-party claims against Plymouth rest solely upon the plaintiff's ability to prove the underlying claims, the School and the District will undoubtedly continue to defend against those claims in substantially the same manner.

11. Further, Plymouth has a meritorious defense to the extent that Plymouth was, at all

relevant times, the employer of the plaintiff and can not by held liable as a joint-tort feasor alongside with the third-party plaintiffs.  Secondly, Plymouth only has a duty, if any, to indemnify the School and District for Plymouth's own negligence and would have a complete defense to the indemnity claim to the extent that the school or District acted negligently, or that the Plaintiff was contributorily negligent. Mr. John W. Marinucci, Director of Operations for the District, stated that he had knowledge of the condition of the stairs and would have repaired them had the school not been slated to be torn down. (Aff. of John W. Marinucci, pp. 44; 46-48, ¶¶ 1-23; 21-24; 1-24; 1-10, attached hereto as Exhibit "C").  Further, Mr. Marinucci stated that because the building would eventually be torn down he would not have repaired the stairs even if he thought there was going to be foot traffic on the steps. (Exhibit "C", pp. 48-49).  Such statements indicate that the School and District were actively negligent in failing to address the known safety concerns at the School, not only while Plymouth employees were at the site, but also while students were attending the school and using the stairs.

12.    Given the negligence of the District, coupled with the fact that Plymouth was not obligated to maintain the stairs, indicates that Plymouth would have a complete defense to the third-party claims.  The interests of justice should dictate that this case be decided on the merits instead of further allowing Plymouth to be made the scape-goat for the active negligence of the District.

**WHEREFORE**, Defendant Plymouth Environmental, Inc., respectfully requests this Honorable Court to enter an Order Vacating the Entry of Default Judgment filed on August 25, 2005, granting the defendant a reasonable extension of time in which to answer, or otherwise plead,  and that further proceedings thereafter take place in this matter, in accordance with the Rules of this Court.

|  |  |
|---|---|
|  | **TIGHE, COTTRELL & LOGAN, P.A.** |
|  |   /s/ Michael K. Tighe |
|  | Michael K. Tighe, DE ID #29 |
|  | First Federal Plaza, Suite 500 |
|  | P.O. Box 1031 |
|  | Wilmington, DE  19899 |
|  | (302) 658-6400 |
|  | Attorneys for Third-Party Defendant |
| DATED: June 14, 2006 | Plymouth Environmental Co., Inc. |