IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES MAHONEY and<br>TINA MAHONEY, h/w | ) | |
| | ) | |
| | ) | CIVIL ACTION NO.  05-163 GMS |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | TRIAL JURY OF TWELVE |
| BENJAMIN BANNEKER ELEMENTARY | ) | DEMANDED |
| SCHOOL and MILFORD SCHOOL DISTRICT | ) | |
| | ) | **E-FILE** |
| Defendants, Third-Party | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLYMOUTH ENVIRONMENTAL CO., INC. | ) | |
| | ) | |
| Third-Party Defendants | ) | |

**DEFENDANT, THIRD-PARTY PLAINTIFFS' RESPONSE IN OPPOSITION
TO PLYMOUTH ENVIRONMENTAL CO., INC.'S MOTION TO VACATE DEFAULT
JUDGMENT**

1.      Third-Party Defendant Plymouth Environmental Co., Inc. (Plymouth) has filed a

Motion to Vacate Default Judgment.  The motion is more properly considered a Motion to

Vacate Entry of Default as no judgment has, to date, been entered against Plymouth.  As such,

the inquiry with respect to setting aside the entry of default is set forth in Rule 55(c).  Rule 60(b)

is not implicated as a default judgment has not been entered.  The Court should deny Plymouth's

motion because Plymouth has failed to establish good cause for setting aside the default, as

required by Fed. R. C. P. 55(c).

2.      Motions to set aside an entry of default pursuant to Rule 55(c) are decided at the

discretion of the court.  In exercising its discretion, the Court should consider the following

factors: "1) whether the plaintiff will be prejudiced; 2) whether the defendant has a meritorious

defense; 3) whether the default was the result of the defendant's culpable conduct; and 4) the effectiveness of alternative sanctions.[1]

3.　　The threshold inquiry is whether the defendant has a meritorious defense.[2]  A meritorious defense can be established by showing that the allegations of the defendant's answer, if established at trial, would constitute a complete defense.[3]  Allegations establishing a meritorious defense must include specific facts and cannot be couched solely in conclusory language.[4]  In analyzing prejudice to the plaintiff, the Court "must determine whether the non-defaulting party's ability to pursue its claim has been hindered since the entry of default or whether relevant evidence has become lost or unavailable."

4.　　Plymouth contends that if the default is lifted, it has a "complete" defense to both the tort claims and the indemnification claims made in the third party complaint.[5]  With respect to the tort claims, Plymouth alleges that it cannot be held liable as a joint tortfeasor because it was the Plaintiff's employer.  Although the worker's compensation exclusivity provisions would normally be applicable to the tort claims against Plymouth, Plymouth has waived this defense by not filing a timely answer.

5.　　With respect to the indemnification claims at issue, Plymouth makes only conclusory allegations with respect to its defense to the indemnification claim, asserting without support, that "Plymouth only has a duty, if any, to indemnify the School and the District for Plymouth's own negligence and would have a complete defense to the indemnity claim to the

---

[1] *International Brotherhood of Electrical Workers, Local Union No. 313 v. Skaggs*, 130 F.R.D. 526, 528-29 (D. Del. 1990).
[2] *United States v. $55,518.05 In U.s. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).
[3] *Id.*
[4] *Id.*
[5] The Third Party Complaint is attached hereto as exhibit I.

extent that the school or District acted negligently, or that Plaintiff was contributorily negligent."
Mot. ¶ 11.  Conclusory allegations are insufficient to set aside an entry of default.

6.      Even if the Court were to consider the merits of these conclusory allegations,
Plymouth's arguments ignore the contract language.  Defendants' contract with Plymouth gave
Plymouth control over the means, methods, sequences and procedures related to the performance
of the work under the contract, as well as sole responsibility for coordinating all portions of the
work.[6]  It also provided that Plymouth would be *solely responsible* for jobsite safety,[7] and that
Plymouth would be responsible for the acts and omissions of its employees.[8]

7.      In Article 10 of the General Conditions section of the contract, Plymouth agreed
to be responsible for "initiating, maintaining and supervising *all safety precautions* and programs
in connection with the performance of the contract."[9]  Plymouth further agreed to take
reasonable precautions and provide reasonable protection to prevent injury to its employees,[10] to
comply with applicable safety laws,[11] and to *erect and maintain,* as required by existing
conditions, reasonable safeguards for safety and protection, including *posting danger signs and
other warnings against hazards.*[12]

8.      Plymouth assumed further safety responsibilities in the contract specifications
prepared by Harvard Environmental.  There, Plymouth agreed to be responsible for "*all damages
incurred from project related activities and/or personnel assigned to the project.*"[13]  Plymouth
also assumed full responsibility and liability for compliance with all applicable regulations
pertaining to work practices and protection of workers, and to hold Defendants harmless for

[6] Exh. A (AIA Gen. Cond. § 3.3.1).
[7] *Id.*
[8] *Id.* at § 3.3.2.
[9] Exh. B (AIA Gen. Cond. § 10.1.1) (emphasis added).
[10] *Id.* at § 10.2.1.
[11] *Id.* at § 10.2.2.
[12] *Id.* at § 10.2.3.
[13] Exh. C (Specifications H-2010, § 01013, Part 1, § 1.3(e)) (emphasis added).

failure to comply with all applicable work safety regulations on the part of Plymouth or its employees.[14]  In addition, Plymouth agreed to *hold harmless* both the Defendants and their representatives for failure to comply with any applicable work, safety or other regulation on the part of Plymouth, or its employees.[15]

9.      In addition to agreeing to the aforementioned safety provisions, Plymouth agreed to indemnify Defendants for all claims, damages, losses and expenses, *including attorneys fees,* arising out of or resulting from the Work to the extent caused by the negligent acts or omissions of Plymouth, its employees, or anyone for whose acts it may be liable, *regardless of whether the claim was caused in part by Defendant.*[16]

10.      Even if, as Plymouth maintains, it was not obligated to "maintain" the stairs, the contract clearly imposed an obligation on Plymouth to take reasonable steps to protect its employees from safety hazards they encountered in the performance of the work, including posting danger signs and other "warnings," which include roping off hazardous areas.  Plaintiff testified that she was injured at the school, while performing a task related to the work, to wit, putting a polyurethane liner in a trailer on the site.[17]  Pursuant to the contract, Plymouth is responsible for all damages arising from this incident, regardless of whether they were caused in part by Defendants.

11.      Based upon the foregoing, it is clear that Plymouth does not have a meritorious defense to Defendants' indemnification claim.  It is also clear that Plymouth is responsible for all

---

[14] *Id.* at § 10198, Part 1, § 1.3(B).
[15] *Id.*
[16] Exh. D (AIA Gen. Cond.  § 3.18.1).
[17] Exh. E (T.M. Tr. at p.5).

-4-

damages and must hold Defendants harmless and/or indemnify them for all claims, losses, etc., including attorneys fees, associated with Ms. Mahoney's injuries.[18]

12.    Plymouth also contends that Defendants will not be prejudiced if the default is vacated because Defendants' theories of defense and litigation strategies will not be affected by the addition of Plymouth as an active party to the case. Plymouth's contention is erroneous. The addition of Plymouth to the case will insert an additional party to the case who will be disputing Plymouth's liability. Defendants' inability to conduct discovery to combat a vigorous defense by Plymouth is clearly prejudicial. The prejudice in this case is highlighted by the fact that discovery was sent to Plymouth during the discovery phase of this litigation, which Plymouth did not respond to.[19] The prejudice to Defendants weighs against vacating the entry of default.

13.    The last factor, culpability, is not directly addressed in Plymouth's motion, although there is an assertion that Mr. Kelly, the President of a sophisticated environmental hazards removal company, did not understand what the waiver of service form referred to. This assertion does not pass the straight face test.

14.    The letter sent with the waiver of service form starts out with a clear and unambiguous statement that "[a] lawsuit has been commenced against Plymouth Environmental Co., Inc."[20] In the waiver of service form, moreover, Mr. Kelly acknowledges that he received a copy of the third party complaint naming Plymouth as a defendant.[21] More importantly, the waiver form states unambiguously that Mr. Kelly understood "that a judgment may be entered

---

[18] In its motion, Plymouth refers several times to the alleged negligence on the part of Defendants as being "active" negligence. Plymouth fails to set forth the importance of any such "active" negligence. The negligence at issue, however, relates to an omission. Moreover, in light of the fact that the contract documents required Plymouth to maintain safety on the jobsite, and for all procedures, etc. associated with its work, Defendants' negligence, if any, was failing to discover that Plymouth was not performing its duties. As such, any negligence on the part of Defendants, therefore, was passive, not active.

[19] Exh. F (discovery issued to Plymouth).

[20] Exh. G (May 13, 2005 ltr to Plymouth Environmental).

[21] Exh. H (Waiver of Service of Summons, p.1).

-5-

against [Plymouth] if an answer or motion under Rule 12 [was] not served upon [Defendants] within 60 days after May 13, 2005 . . . ."[22]  For Mr. Kelly to do nothing in the face of this unambiguous language amounts to willful, intentional and/or gross or wanton negligence.

15.    To suggest that Mr. Kelly was reasonably unaware that he was signing a waiver of service related to a lawsuit which was not related to worker's compensation, moreover, is disingenuous.  Nowhere in the Complaints provided to Mr. Kelly, nor in the paperwork sent along with the complaints, is there any mention of worker's compensation.  Mr. Kelly is not uneducated and as his affidavit establishes, he is a highly competent individual, capable of running the daily operations of an environmental hazards removal company.  Mr. Kelly is sophisticated enough to know that you need to read legal documents when they are received and act on them accordingly.  For Mr. Kelly to do nothing renders his conduct highly culpable.

16.    Plymouth's culpability is further evidenced by the fact that it received discovery in this case on or about March 16, 2006.[23]  Even if Mr. Kelly misread the initial waiver of service form, he should have reacted in some fashion to the discovery issued in March of 2006, which clearly indicates that Plymouth is a defendant.  Rather than contact the parties or its insurer to find out what the discovery was about, Plymouth, like before, simply did nothing.  This factor ways against vacating the default.  The Court, therefore, should deny Plymouth's motion.

17.    Another factor not addressed by Plymouth is the availability of alternative sanctions.  The burden of establishing the viability of alternative sanctions, as well as the other factors, is on moving party.  Because Plymouth failed to address this issue, the Court should weigh this factor in favor of denying the motion to vacate because absent the suggestion of alternative sanctions, the Court must presume that there are none which are available.  Even if

---

[22] *Id.* at p.2.
[23] Exh. F (discovery sent to Plymouth).

-6-

the Court considers this issue, in this case, alternative sanctions are not feasible because the

factual discovery in this case is over and the trial is scheduled to begin in the fall. Alternative

sanctions cannot cure the prejudice to Defendants with respect to the lateness of Plymouth's

motion. The court, therefore, should deny the motion.[24]

Respectfully submitted,

WHITE AND WILLIAMS LLP

WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: 302.467.4508
Attorney for Defendant Third-Party
Plaintiff Milford School District
Board of Education

Date:  June 28, 2006

---

[24] Without prejudice to their position that alternative sanctions are not feasible, to the extent that the Court believes that the motion for default is timely and properly supported, the Court should impose conditions upon the lifting of the default. For instance, the Court should award attorneys fees to Defendants' counsel for drafting this response. In addition, the Court should preclude Plymouth from challenging the indemnification language in the contract, deeming the late response to the Third-Party Complaint to be a waiver of those defenses. Consequently, if the Court vacates the entry of default, Plymouth's participation should be limited to defending the liability claims against it in the third-party action. In addition, the Court should preclude Plymouth from identifying liability experts, as none of the other parties have done so, and require Plymouth to respond to the previously issued discovery and grant Defendants 45 days to conduct depositions of any and all witnesses Plymouth intends to call at trial. Finally, the Court should require Plymouth to produce its 30(b)(6) representative with respect to its safety policies and procedures for a deposition within 45 days.

DOCS_DE 127796v.1